## A96A2271. DUGGAN v. THE STATE.
## A96A2272. MATHESON v. THE STATE.
### (483 SE2d 373)

SMITH, Judge.

Appellants Peter Martin Duggan and Robb T. Matheson were involved in a two-car collision that resulted in the death of the victim, a passenger in Matheson's vehicle. Duggan was indicted for homicide by vehicle in the first degree by reckless driving, homicide by vehicle in the first degree by driving under the influence, leaving the scene of an accident, driving under the influence (less safe), and reckless driving. Matheson was indicted for two counts of homicide

by vehicle (reckless driving and driving under the influence), driving under the influence (less safe), and reckless driving.

At trial, the jury found Duggan guilty of vehicular homicide based on reckless conduct, failure to remain at the scene of an accident, driving under the influence of alcohol, and reckless driving. He was acquitted of vehicular homicide based on DUI. Matheson was likewise acquitted of vehicular homicide/DUI; he was found guilty of vehicular homicide/reckless conduct, driving under the influence of alcohol, and reckless driving. Appellants' motions for new trial were denied, and they appeal.

1. Matheson raises the general grounds as to his convictions for driving under the influence and homicide by vehicle based on reckless driving. Construed to support the jury's verdict, the evidence shows that Duggan, Matheson, the victim, and a fourth individual, Anderson, embarked after work on an evening of drinking to celebrate Anderson's birthday. After drinking beer at the home of two participants, they traveled in two cars to a local bar where the drinking continued. Conflicting accounts were presented concerning how much they had to drink. Matheson insisted in a statement to police and a statement to the victim's attorney that he was the "designated driver" and was drinking "lightly," but testimony from other witnesses and Matheson's admissions authorized the jury to conclude that he had five or six beers and drank at least one shot of Jagermeister, a liqueur. The other participants were also drinking heavily as well as smoking marijuana. When Anderson left the bar some time after midnight, in his opinion, all the men were "high."

The remaining three men "closed the place down" at approximately 4:30 a.m., according to Matheson, and decided to drive to another bar which remained open around the clock. Duggan drove one car while Matheson drove the other with the victim "passed out" in the front seat. They drove side by side along the downhill curving ramp from I-285 east to I-85 south at speeds between 70 and 80 mph, although the speed limit was 55. Duggan claimed that Matheson attempted to pass him on the ramp, lost control, and hit his car. Matheson, on the other hand, claimed that Duggan attempted to pass *him* and "bumped" his car, causing him to lose control. Matheson's car rolled repeatedly, ejecting the victim and crushing him to death.

Duggan fled the scene, although he insisted at trial that he left to get help. The investigating officer testified that Matheson was very talkative, red-eyed, very nervous, and smelled of alcohol. At approximately 9:00 the same morning, Matheson was treated at the hospital by a nurse who noted that he still smelled of alcohol. Matheson at first told police that he "just lost control," then told the victim's attorney that he was struck by a mysterious "big white car." Ulti-

mately he "came clean" to the attorney and revealed Duggan's involvement.

On appeal, Matheson seeks to impeach Anderson and discredit his testimony regarding the events of the evening, pointing to inconsistencies and conflicts in Anderson's testimony and that of other witnesses. This court, however, cannot weigh the evidence or determine witness credibility. OCGA § 24-9-80; *Powell v. State*, 218 Ga. App. 556, 557 (462 SE2d 447) (1995). With respect to his conviction for DUI, Matheson admitted that he was drinking on the night in question, and the only question was whether he had consumed alcohol to the extent that he was a less safe driver.[1]

Driving under the influence of alcohol may be shown by circumstantial evidence, if the evidence excludes any reasonable alternative hypothesis except that of guilt. *Posey v. State*, 215 Ga. App. 565, 566 (2) (451 SE2d 463) (1994). Matheson offered no alternative explanation for his condition at the scene or at the hospital several hours later, or for the testimony that he had consumed a substantial quantity of alcohol. "Evidence as to the manner of driving, including excessive speed, may be taken into account where there is evidence that the defendant has been drinking, for the purpose of determining whether or not his manner of driving shows him to have been affected by the intoxicant to the extent that he drives less safely and carefully than he might otherwise have done, and for this purpose evidence of travel in excess of the legal rate of speed may be considered." (Citation and punctuation omitted.) *Collins v. State*, 177 Ga. App. 758, 759 (2) (341 SE2d 288) (1986).

The cases relied upon by Matheson are distinguishable. In *Groom v. State*, 187 Ga. App. 398, 400 (370 SE2d 643) (1988), no one testified to the time span over which the accused consumed alcohol or the quantity he consumed. There was no testimony that the defendant was under the influence of alcohol at any time, and no one observed him at the scene because he fled before the accident was discovered. In *Davis v. State*, 206 Ga. App. 647 (426 SE2d 267) (1992), the accused denied drinking and presented a negative blood alcohol test. In *Clay v. State*, 193 Ga. App. 377 (387 SE2d 644) (1989), the accused denied drinking other than the night before the incident and presented witnesses who testified that he had not consumed alcohol or shown any signs of intoxication on the morning of his arrest and that his eyes were normally red.

In this case, testimony was presented that Matheson had been drinking, was driving well in excess of the speed limit, and attempted

---

[1] The blood alcohol test administered to Matheson was excluded from evidence under *State v. Causey*, 215 Ga. App. 85, 86 (449 SE2d 639) (1994).

to pass another vehicle on what he knew to be a sharp curve, causing the collision. This provided evidence, albeit circumstantial, that Matheson was a less safe driver at the time of the collision. *Gilbert v. State*, 262 Ga. 840, 841 (1) (426 SE2d 155) (1993).

With respect to Matheson's conviction for vehicular homicide based on reckless driving, evidence was presented that, after consuming alcohol, he drove at speeds of 20 to 25 miles over the speed limit and attempted to pass another vehicle on a sharp downhill curve but was unable to stay in his lane. Viewed in the light most favorable to the verdict, sufficient evidence was presented to enable a rational trier of fact to find that Matheson was guilty of the offenses charged beyond a reasonable doubt. *Mote v. State*, 212 Ga. App. 551 (1) (442 SE2d 799) (1994); *McNabb v. State*, 180 Ga. App. 723, 725 (4) (350 SE2d 314) (1986).

2. Matheson also contends the trial court mischaracterized evidence and overemphasized the importance of testimony of witnesses for the State in its pre-evidentiary statement to the jury. In its precharge, the trial court stated that "legal evidence consists of two things and only two things. One of those will be sworn testimony under oath from the witness stand by those witnesses subpoenaed by the State, because the State has the burden of subpoenaing witnesses, bringing them into court and having them testify. But anyone who is called as a witness, takes the stand and testifies under oath is giving evidence that you may consider during the trial of this case." Because of the uncertainty as to whether a defendant will present evidence, it is probably unwise to refer to the source of evidence in a pre-evidentiary instruction. We note, however, that the statement complained of was given as the trial court instructed the jury of the State's burden to prove its case. The trial court also referred to "anyone who is called as a witness" and reiterated in its main charge that "[e]vidence includes all of the testimony of the witnesses and the exhibits admitted during the trial of the case." Any verbal slip in the preliminary charge was thus corrected. See *Malone v. State*, 219 Ga. App. 728, 730 (2) (466 SE2d 645) (1995). Moreover, Matheson deprived the trial court of any opportunity to correct the asserted error because he failed to make a contemporaneous objection. Id. at 729 (2).

Matheson also contends the trial court's main charge was inadequate to correct the complained-of error in its pre-evidentiary statement, in effect asserting that a curative instruction should have been given. Matheson, however, never requested a curative instruction or a mistrial. Once again, he failed to give the trial court the opportunity to correct the asserted error. Id.

3. Both Matheson and Duggan enumerate as error the trial court's charge that "the law does not permit jurors in arriving at your

verdicts to be governed by sympathy or prejudice. You may not, therefore, render a verdict in this case based upon sympathy for any party or prejudice against any party. Any verdict that you return must be supported by the evidence produced at trial without in any way being affected by either sympathy or prejudice."

If circumstances exist that may unduly arouse the jury's emotions of prejudice, hostility, or sympathy, the trial court may in its discretion deliver an appropriate charge. *Emory Univ. v. Lee*, 97 Ga. App. 680, 698 (104 SE2d 234) (1958) (citing *Johnson v. State*, 128 Ga. 102 (2) (57 SE 353) (1907), and *Powers v. State*, 138 Ga. 624 (5) (75 SE 651) (1912)). See also *Dill v. State*, 254 Ga. 17, 18 (325 SE2d 765) (1985); compare *Legare v. State*, 250 Ga. 875, 877-878 (2) (302 SE2d 351) (1983) ("sympathy or prejudice" charge incorrect in context of jury's deliberations on death penalty because sympathy relevant to consideration of mitigating factors in recommendation to mercy).

The trial court here clearly instructed the jury not to be influenced by sympathy or prejudice for or against *any* party in the case. Given the possible hostility aroused by DUI offenders, possible feelings of sympathy for the deceased and his family, and testimony that appellants gave false information to the police and others and that Duggan left the scene, ample basis existed for the trial court to give this charge. Overall, the charge may well have been of more benefit than harm to appellants; in fact, in another part of his brief, Duggan argues that the jury was unduly swayed by sympathy for the victim.

Appellants also complain that this charge deprives them of their right to an acquittal purely on the basis of sympathy. This contention has no merit. While the jury does possess a de facto power of nullification and may acquit the defendant regardless of the strength of the evidence against him, it is nevertheless the jury's duty to convict if the evidence proves the defendant guilty beyond a reasonable doubt. *Cargill v. State*, 255 Ga. 616, 642 (30) (d) (340 SE2d 891) (1986). The trial court may never direct a verdict of guilty, *Bryant v. State*, 163 Ga. App. 872 (1) (296 SE2d 168) (1982), but it may refuse to charge on the principle of jury nullification and may limit jury argument on that point. *Andrews v. State*, 222 Ga. App. 129, 130 (1) (b) (473 SE2d 247) (1996). It follows that the trial court may give a charge properly tailored to and authorized by the evidence, even if that charge arguably has a tangential effect on the jury's inclination to acquit on the basis of sympathy alone. The trial court did not err in giving this charge to the jury.

4. Both Matheson and Duggan enumerate as error the trial court's charge on lesser included offenses. The charge complained of follows in substance the pattern given in Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. II, p. 15 (1991). There is no merit in appellants' contention that the charge foreclosed

or limited the jury's consideration of the lesser included offense. *Woods v. State*, 208 Ga. App. 565 (1) (431 SE2d 167) (1993). Appellants' contention that the trial court demanded unanimity on the greater offense, in violation of *Cantrell v. State*, 266 Ga. 700 (469 SE2d 660) (1996), is without basis in fact. We have carefully reviewed the charge, and the trial court "did not intimate that a court can insist upon unanimous agreement on a greater offense before consideration of a lesser offense." Id. at 702.

5. Both Matheson and Duggan claim the trial court "continuously demeaned the importance of the jury instructions and demeaned the importance of the law to appellant's jurors." Citing no relevant authority,[2] they contend that the trial court was "shunning its responsibility and the importance of explaining the law" to the jury by allegedly instructing the jurors to ignore the charge given. We have carefully reviewed the instructions complained of, and find that the trial court's statements cannot fairly be construed as the appellants contend. Reading the charge as a whole, the trial court fully and fairly instructed the jury on the relevant principles of law and their duty as jurors. See generally *Langston v. State*, 208 Ga. App. 175, 177 (430 SE2d 365) (1993).

6. In Case No. A96A2271, Duggan complains that the trial court made improper statements to the jury. During the State's closing argument, Matheson's brother made audible negative comments directed at the prosecutor. The record explicitly shows that "the jury was excused for an overnight recess at 7:15 p.m." The trial court then asked, "is there anything else from the attorneys before we break?" The court then called Matheson's brother forward to admonish him, making the comment complained of during the admonition. While these comments might have been inappropriate in the presence of the jury, it is apparent from the record that they were not made until after the jury was excused. See *Dukes v. State*, 186 Ga. App. 773, 774 (3) (369 SE2d 257) (1988).

Duggan argues that a closing notation from the court reporter at the end of the transcript volume, "jury was excused and an overnight recess was had," shows that the jury was not excused until later. In light of the earlier notation giving a precise time of dismissal, this general statement appears to be mere surplusage or a reporter's inadvertent repetition. There is nothing in the record to indicate that jurors were in fact still in the courtroom at the time; or that, if they were, they heard any of the judge's comments to Matheson's brother. While Duggan also enumerates as error the failure of his trial coun-

---

[2] Duggan and Matheson cite only one decision, *Daniels v. State*, 264 Ga. 460 (448 SE2d 185) (1994). This decision reviewed the sufficiency of evidence at a bench trial for violation of the Anti-Mask Act, OCGA § 16-11-38, and is of no relevance here.

sel and his counsel on motion for new trial to object to this comment, the fact that no objection was raised by Duggan's counsel or by counsel for Matheson (who was most affected by the misconduct of his brother) is consistent with the conclusion that the jury had already been excused. Also consistent with this conclusion is the trial court's inquiry for any motions or other matters to be taken up with counsel before Matheson's brother was reprimanded, as such matters would have been discussed outside the presence of the jury.

7. Duggan's two enumerations of error complaining of other comments by the trial court both assert at least two separate errors: the trial court's allegedly improper comment and ineffective assistance of counsel arising out of failure to object to the alleged error. "OCGA § 5-6-40 requires that enumerations shall set out separately each error upon which relied. When an appellant argues more than one error within a single enumeration, this Court in its discretion may elect to review none of the errors so enumerated in violation of OCGA § 5-6-40 or elect to review any one or more of the several assertions of error contained within the single enumeration and treat the remaining assertions of error therein as abandoned. We elect in our discretion to review none of these multiple assertions of error." (Citations and punctuation omitted.) *White v. State*, 221 Ga. App. 860, 861 (1) (473 SE2d 539) (1996).

8. Duggan contends that Count 5 of the indictment charged him with misdemeanor homicide by vehicle and that his sentence for felony homicide by vehicle therefore must be reversed. This contention has no merit. Duggan did not assert any defect in the indictment until after his conviction and accordingly cannot challenge it now unless the alleged defects in the indictment are so great as to cause the indictment to be absolutely void. *State v. Eubanks*, 239 Ga. 483, 485-486 (238 SE2d 38) (1977); *Ivie v. State*, 151 Ga. App. 496, 497 (2) (260 SE2d 543) (1979). The indictment charged, in relevant part, that Duggan "did, without malice aforethought, cause the death of another person . . . through the violation of [OCGA §] 40-6-390 Reckless Driving by driving . . . a moving vehicle, at a speed exceeding the maximum speed limit on the curved ramp from Interstate 285 East to Interstate 85 South in reckless disregard for the safety of persons and property." The indictment directly tracks the language of OCGA § 40-6-393 (a) and is sufficient to charge Duggan with felony vehicular homicide. *State v. Black*, 149 Ga. App. 389, 391-392 (4) (254 SE2d 506) (1979), relied on by Duggan, is inapposite for several reasons. Not only did Black make a timely challenge to the indictment, it was subject to special demurrer because it failed either to cite the underlying Code section or to include its crucial language "in reckless disregard for the safety of persons or property." Id. This enumeration of error is without merit.

▌▌▌

9. In Duggan's remaining enumerations of error, he asserts ineffective assistance by both trial counsel and counsel on his motion for new trial. These assertions focus on the failure of counsel to object to, or to raise as grounds for a new trial, various actions allegedly taken by the trial court in admitting evidence, charging the jury, or making certain statements in the presence of the jury. We have carefully reviewed each of these enumerations of error and find that all lack merit.

*Judgments affirmed. Andrews, C. J., and Pope, P. J., concur.*

DECIDED MARCH 7, 1997.

*Wolfe & Steel, Brian Steel*, for appellant (case no. A96A2271).
*B. Thomas Cook, Jr.*, for appellant (case no. A96A2272).
*J. Tom Morgan, District Attorney, Robert M. Coker, Benjamin M. First, Assistant District Attorneys*, for appellee.