A97A1715. IN RE WOODALL.
A97A1716. IN RE ROBERSON.
(499 SE2d 150)

BLACKBURN, Judge.

In Case Nos. A97A1715 and A97A1716, John Woodall and David Roberson, respectively, appeal the ruling of the Probate Court of Chatham County finding them in wilful contempt for their refusal to comply with its order requiring the return of attorney fees paid to them from settlement sums in the litigation arising from a medical malpractice case involving Julia Mae Shiggs. Because these cases arise from the same set of facts, they are consolidated herein for the purpose of resolving these appeals. For the reasons set forth below, we are compelled to reverse the probate court's finding of contempt in both cases based upon a lack of jurisdiction.

On August 12, 1994, Julia Mae Shiggs was admitted as a patient to Memorial Medical Center, Inc., where a caesarean section was performed on her on that day by Dr. Speir N. Ramsey. Following this operation, Shiggs developed internal bleeding which required additional surgery hours later. Shiggs subsequently developed bleeding and respiratory disorders and experienced a cardiac-respiratory arrest, leaving her severely brain damaged and comatose. All of the alleged acts of medical malpractice occurred in August 1994.

On October 15, 1994, while Shiggs remained comatose at Memorial, Michael L. Mydell, her common law husband, was appointed as guardian of the person and property of Shiggs due to her permanent incapacity. Shiggs was subsequently transferred from Memorial to a nursing institution on November 11, 1994. Her condition continued to deteriorate, and she ultimately died on December 30, 1996.

On April 14, 1995, Roberson, acting on behalf of Mydell as an individual and as guardian for Shiggs, filed an action in the State Court of Chatham County against Memorial and Dr. Ramsey alleging an individual claim on behalf of Mydell for loss of consortium and a

claim on behalf of Shiggs for medical malpractice. On September 12, 1995, Mydell signed a contingency fee contract with Roberson which provided for attorney fees of 50 percent of the proceeds of any recovery, plus reimbursement for any expenses. Roberson, in turn, retained Woodall to assist him in the trial of the malpractice action, under an agreement between the lawyers, which provided for a division of the attorney fees under Roberson's contract with Mydell. This agreement was executed by Woodall and Roberson nunc pro tunc to January 1, 1996.

Prior to the beginning of trial on January 16, 1996, Mydell dismissed, with prejudice, his individual claim for loss of consortium against the defendants. The case then proceeded to trial on Shiggs' claims based on medical malpractice, and on January 22, 1996, the sixth day of trial, the parties orally agreed to settle the case, with the approval of the trial judge, for $3,325,000 in cash plus the continued provision of certain medical services to Shiggs for the remainder of her life, the details of which remained to be worked out between the parties. No reasonable present monetary value of the future medical services was established or approved at that time.

Dr. Ramsey agreed to contribute $600,000 and Memorial agreed to contribute $2,725,000 for a cash settlement of $3,325,000, plus the provision of certain future medical services to Shiggs, for which Memorial would be solely responsible. Certain trusts were to be established for the benefit of Shiggs and her children and the $600,000 payment by Dr. Ramsey was to be used to fund the trusts.

The $3,325,000 cash portion of the settlement was paid as follows: On January 25, 1996, a partial settlement check in the amount of $1,900,000 was delivered by Memorial to Roberson, was endorsed by the appropriate parties and deposited in Roberson's trust account. An additional sum of $825,000 was wire-transferred by Memorial into Roberson's trust account on January 26, 1996.

On January 28, 1996, prior to the approval of any written settlement agreement by Mydell or the court, Roberson calculated the attorney fees and issued checks to himself and to Woodall. Roberson issued a check to Woodall for his share of the attorney fees in the amount of $1,100,000, in accordance with the agreement between the lawyers, which Woodall deposited on January 29, 1996. Roberson also distributed $1,300,000 to himself as his own fee. Roberson used a gross settlement amount of $4,800,000 to calculate 50 percent attorney fees of $2,400,000. Roberson also retained $102,295.24 for his expenses. It is unclear how Roberson arrived at the gross figure, as there were only two components that made up that figure, the cash settlement and the present value of the future medical services to be rendered to Shiggs, which figures do not agree with the figure used by Roberson.

Roberson apparently relied on his expert's evaluation of the present value of the future medical services which were to be provided to Shiggs of $1,425,000, plus the cash settlement of $3,325,000, to arrive at the gross settlement figure of $4,800,000 upon which he calculated the 50 percent attorney fees in the amount of $2,400,000. In its November 1, 1996 order, the state court pointed out, among other things, a discrepancy in the valuation of future services by Mydell. The court noted: "The record reflects that the value of the future services to be provided by Memorial Medical Center, Inc. may have been inaccurately calculated and used in making distribution of the proceeds pursuant to the attorney fee contract. Specifically, the distribution sheet, which was presented to the Court following the first hearing and at the request of the Court, reveals that the future services were valued at $1,425,000. The court noted that the actual documentation of medical expenses for Shiggs was $1,091,909 and may have included expenses other than those for respiratory equipment and the special mattress which were the only future medical expenses for which American was liable. On further inquiry by the Court, the counsel for the Plaintiff explained their methods for calculating the value of the future benefits and appear to have overvalued the services."

On February 16, 1996, Mydell, as guardian for Shiggs, signed a disbursement statement prepared by Roberson indicating a gross settlement in the amount of $4,800,000. The statement listed attorney fees of $2,400,000, attorney expenses of $102,295.24, a payment to Mydell, as guardian, in the amount of $151,359.33, and other expenses. The amount of the fees taken by Roberson and Woodall equaled one-half of the cash settlement and approximately one-half of the value of future services to be provided to Shiggs, as calculated by an economist hired by Roberson. The only purpose in establishing the present value of the future medical services was to calculate attorney fees. Such value was of no benefit to anyone else, as Memorial was obligated to pay the cost without regard to the amount thereof. Thus, Roberson and Woodall took 72 percent of the cash received in the settlement to pay their fees.[1] This left a $600,000 trust fund and the medical services received by Shiggs prior to her death as the total benefits to the plaintiff and her children. Although the settlement statement listed Mydell as a payee in his capacity as guardian, the check issued to Mydell on February 16, 1996, actually was made out to him in his individual capacity. It is unclear from the record whether this payment was intended to compensate Mydell for statutory guardian fees or was in consideration of his earlier dismis-

---

[1] In addition, Roberson and Woodall took $102,295.24 to pay for their expenses.

sal of his individual claim.[2]

Also on February 16, 1996, Roberson and Woodall filed petitions with the probate and state courts seeking approval of the settlement. The settlement agreement submitted to the court was not executed. It was returned to Roberson and was ultimately executed on July 1, 1996. Then, on July 29, 1996, Roberson filed a second petition to compromise a doubtful claim and for approval of the settlement agreement in the probate court and a second motion for approval of the settlement in the state court. A hearing was held on October 1, 1996,[3] and both the state court judge and probate judge were present. At this hearing, it became apparent that the attorneys for Shiggs and Memorial were in disagreement as to the future services the parties had intended to be provided to Shiggs,[4] and which necessarily raised questions with regard to the value of such services. The written agreement, however, was clear and unambiguous as the court ultimately found. The written settlement agreement provided: "As additional consideration [for the settlement], Memorial Medical Center, Inc. agrees to provide to Julia Mae Shiggs the respiratory care services currently provided and the use of the same or similar Hill-Rom mattress currently provided, for the lifetime of Julia Mae Shiggs."

On October 14, 1996, the probate court removed Mydell as guardian for Shiggs.[5] After a subsequent hearing on November 1, 1996, the state court issued an order which approved the written agreement, including its provision for future medical services. The court could not reconcile Mydell's disbursement figures with the settlement agreement between the parties and therefore refused to approve the distributions which had actually been made. Rather, the state court judge requested that the probate court review "the distribution of funds and the conduct of the Guardian, Michael Mydell, in regard to his fiduciary duties and responsibilities to his ward, Julia Mae Shiggs."

On November 8, 1996, the judge refused to approve Mydell's petition to compromise claim filed in the probate court, finding that

---

[2] The record shows, however, that Mydell's loss of consortium claim was dismissed by him with prejudice prior to trial because he was cohabitating with another woman whom he had impregnated.

[3] Two previous hearings were held; however, Roberson sent an associate unfamiliar with the case in his stead. Because this associate was unable to address the court's concerns, the hearing on October 1 became necessary.

[4] This disagreement led to the filing of a separate lawsuit with regard to this issue in superior court notwithstanding the clear language of the written settlement agreement.

[5] The probate judge stated, "Whether he was in good faith or not, it's clear to this Court that this man is totally unable to manage any of the funds of this ward. He is totally unable to make the timely reports to this court. He is unable to read, and I doubt that he could even read the Citation to Show Cause that we issued. He could not read the settlement statement that he signed." J. Hamrick Gnann, Jr. replaced Mydell as guardian of Shiggs' estate.

the disbursements of the settlement proceeds which were made were improper. The probate court ordered that "the attorneys who have come into possession of the assets of Julia Mae Shiggs, i.e. David Roberson and John T. Woodall, pay all money received by them on behalf of Julia Mae Shiggs . . . into the registry of the State Court of Chatham County, Georgia."

After issuing a show cause order requiring Roberson and Woodall to explain why they had not reimbursed Shiggs' estate, the probate court found Roberson and Woodall in contempt of its November 8, 1996 order and provided that the attorneys could purge themselves of contempt by depositing surety in the amount of $2,400,000, the amount of attorney fees disbursed without approval of the court. The probate court further ordered that if Roberson and Woodall failed to deposit the funds as directed they would be incarcerated. This appeal then ensued.

1. Both Woodall and Roberson contend that the probate court exceeded its jurisdiction by requiring them to pay their attorney fees into the state court's registry. They further contend that they cannot properly be held in contempt for violating such a void order.

"The [probate court] is a court of general jurisdiction with respect to particular subject-matters; but it is not so in the sense of having jurisdiction generally over every possible subject-matter, question or issue." *Dix v. Dix*, 132 Ga. 630, 634 (64 SE 790) (1909). There are a number of instances in which the probate courts lack jurisdiction to deal with claims regarding real and personal property distributed by a fiduciary to third parties.

"In *Echols v. Almon*, 77 Ga. 330 (1 S.E. 269), the Supreme Court held that the [probate court] was without jurisdiction to issue an execution in favor of an administrator against one of the distributees of the estate for a claimed overpayment, as that was a personal issue between the administrator and the distributee to be adjudicated in a court of law. In *Dix v. Dix*, [supra], the court held that there was no provision of law for the trial in the [probate court] of a claim to property set apart to a widow as a twelve-month's support. In *Thompson v. Allen*, 160 Ga. 535 (128 S.E. 773), the Supreme Court held that the [probate court] was without jurisdiction to award a judgment in favor of an administratrix of the executor of an estate against the children of the testator, who were legatees under his will, for money paid by the executor for the use and maintenance of such children. In *Cook v. Weaver*, 77 Ga. 9, the Supreme Court held that the power to cite an executor to a settlement in the [probate court] had reference to an executor who was acting, and not to an executor who had been discharged. In *Ballard v. Zachry*, 54 Ga. App. 101 (187 S.E. 139), this court held that it was only an executor or administrator, standing in the relationship of an officer of court to the [probate court], who could

be called to an accounting in that court with respect to his act in the management of the estate. In each of those cases, the proceeding was one dealing with a claim to property, or a personal claim in favor of or against the administrator or executor, or a claim against a person who was not an officer of the court in which he was cited to appear." *Murphy v. Hunt*, 73 Ga. App. 707, 713-714 (37 SE2d 823) (1946). Furthermore, "it is well-settled that probate courts do not have jurisdiction to adjudicate conflicting claims of title to real or personal property." *In re Estate of Adamson*, 215 Ga. App. 613 (1) (451 SE2d 501) (1994).

As a general rule, guardians of the person of incapacitated adults have "those rights and powers reasonably necessary to provide adequately for the support, care, education, and well-being of the ward." OCGA § 29-5-3 (a). Included among these is the power to participate in legal proceedings in the name of the ward. OCGA § 29-5-3 (b) (6). However, in any legal proceeding wherein the interest of the ward could be adverse to that of the guardian, the guardian must petition the court for the appointment of a guardian ad litem.

The guardian of the property of an incapacitated adult must generally give a bond and has such powers as set out in other sections of the Georgia Code, including OCGA §§ 29-2-2 through 29-2-24. OCGA § 29-5-4. OCGA § 29-2-2 provides: "Every guardian shall be allowed all reasonable disbursements and expenses suitable to the circumstances of the ward committed to his or her care."

Woodall has also contended that he could not be held in contempt because he was an independent contractor of Roberson and had no direct responsibility to the client in the state court proceedings. Woodall argues, in essence, that he was hired by Roberson to try the case. We point out that any attorney who acts on behalf of a party to a lawsuit has a direct accountability to such party whether he was hired directly by such party or indirectly by the retained attorney. Such attorney cannot avoid legal or ethical considerations by asserting an independent contractor defense.

Certainly, the probate court has the power to hold officers of the court in contempt for failing to comply with its lawful orders and mandates. However, "[a]n order of contempt cannot be based on noncompliance with a void order." *Adamson*, supra at 614 (2). Because the order underlying the finding of contempt in this case was void, the probate court's finding of contempt by Roberson and Woodall cannot stand.

The premise of both of the underlying appeals is a claim for property, specifically attorney fees that have already been paid to Roberson and Woodall and approved by Mydell in his capacity as guardian for Shiggs. In its November 8 order, the probate court required Roberson and Woodall to pay into the state court all of the attorney fees

they had received in this matter until such time as the court determined the lawyers' entitlement to such fees. As no court has determined that Roberson and Woodall are not entitled to their attorney fees, they have a claim of title to such fees. They represented Shiggs and received a favorable result on her behalf, and they now contend that their fees are in accordance with their employment contract and were authorized by the guardian.

The probate court's finding that the settlement of Shiggs' estate was not in her best interests and its requirement that the entirety of the fees be paid into the state court's registry must necessarily rest, at least in part, on the notion that the fees have not been appropriately earned, and that title thereto remains with Shiggs' estate. Otherwise, the probate court's direction that the entirety of the fees be returned would be a meaningless exercise. Orders which ultimately turn on the question of title are the province of the state court, not the probate court. *Adamson*, supra at 613-614. While the probate court's directive is morally satisfying, it is nonetheless jurisdictionally defective. Accordingly, "[w]here the [probate court] is without jurisdiction to deal with a particular subject-matter, or to make a decision in regard to it, an effort to do so is ineffectual; and this is true whether want of jurisdiction of the subject-matter is urged before that court or not." *Dix*, supra at 634.

The parties concur that, as a matter of law, Mydell had the right to obtain and remunerate counsel with regard to the representation of Shiggs without approval of the probate court. However, Mydell requested that the probate court approve the payment of attorney fees in the amount of $2,400,000 in his petition to such court. In its order, the probate court noted that "[a]mong other things the instant petition seeks approval, *after the fact*, of the payment of $2,400,000 in attorneys' fees." (Emphasis in original.)

In reaching this conclusion, the probate court cites OCGA § 29-2-22. However, this Court has "construe[d] this section to mean that the guardian 'is authorized' to provide for legal counsel, and in the event of a dispute between the guardian and counsel as to fees, either 'may' petition the [probate court] for a judgment fixing the amount." *Dowdy v. Jordan*, 128 Ga. App. 200, 211 (3) (196 SE2d 160) (1973). There is no evidence of a dispute herein between Mydell, Roberson, and Woodall which would trigger this Code section.

As a general matter, guardians have the power to compromise doubtful and contested claims against their wards, if such compromise is in the ward's interest. OCGA § 29-2-16. OCGA § 29-2-16 (i), which was enacted in 1995, provides: "If legal action has been instituted and the guardian and the defendant in such action have agreed upon a settlement, the settlement must be approved by the judge of the court before whom the action is pending. The guardian shall not

be permitted to dismiss the action and present the settlement to the probate court for approval without the approval of the trial judge before whom the action is pending."

We note that this Code section refers specifically to the approval of settlements, not disbursements. We further note that although this increased overview of settlements by probate courts was enacted in 1995, the statutory provisions allowing guardians to generally make all reasonable *disbursements* on behalf of their wards were not equally limited. The guardian is required to make certain returns to the probate court pursuant to OCGA § 29-2-44, and it is through this process that the probate court oversees disbursements which was not amended by the 1995 amendment.

While we must reverse the contempt order of the probate court, we note that this procedurally complex and morally troubling case is not brought to its final close here. It is clear that serious issues are implicated by the facts of this case with regard to the management of Shiggs' estate, the representation of Mydell individually and as guardian of Shiggs by Roberson and Woodall, the disbursements of the settlement funds, and the calculation of the value of future medical services and the amount of attorney fees paid to the lawyers. These issues are not presently before this Court.

Nothing herein precludes the probate court from dealing with Mydell, as guardian, for any mismanagement of Shiggs' estate, including improper disbursements of his ward's property. OCGA § 29-2-79. Shiggs' current personal representative is not precluded from bringing appropriate actions against Roberson and Woodall in a court of competent jurisdiction if their fees were unreasonable, their representation was deficient in some way, if their fiduciary duties to Mydell and Shiggs were violated, if there was a fraudulent conspiracy between the guardian and the attorneys to defeat the rights of Shiggs or her heirs, or if there is any other proper claim of misfeasance or malfeasance by Mydell or the lawyers, which is not addressed in this opinion.

However, once a guardian transfers property to third parties who have a claim of right to that property and ownership issues have ripened, the power and jurisdiction of the probate court, as discussed above, has historically been circumscribed. This Court has no authority to broaden the jurisdiction of the probate court.

2. Based on the above, we need not consider the remaining enumerations of error raised by Roberson and Woodall.

*Judgments reversed. Pope, P. J., and Johnson, J., concur.*

Decided March 20, 1998 ▆▆▆▆▆▆▆

*Arnall, Golden & Gregory, Ann S. Infinger, Scott F. Bertschi,*

*John E. Suthers*, for appellant (case no. A97A1715).
*Betty Walker-Lanier*, for appellant (case no. A97A1716).
*Karsman, Brooks & Callaway, Dana F. Braun, Gannam & Gnann, J. Hamrick Gnann, Jr., Bordeaux & Abbot, Louisa Abbot, Frederick S. Bergen*, for appellee.