A97A1715. IN RE WOODALL.
A97A1716. IN RE ROBERSON.
(526 SE2d 69)

BLACKBURN, Presiding Judge.

John Woodall and David Roberson appeal the ruling of the Probate Court of Chatham County finding them in wilful contempt. The probate court found Woodall and Roberson refused to comply with its order requiring the return of $2.4 million in attorney fees paid to them from settlement sums in the litigation arising from a medical malpractice case involving Julia Mae Shiggs, an incapacitated adult. On appeal, Woodall and Roberson argue that the probate court lacked jurisdiction to enforce a contempt order against them and, alternatively, that the imposition of contempt violated their due process rights. For the reasons set forth below, we affirm the probate court.

1. In *In re Woodall*, 231 Ga. App. 391 (499 SE2d 150) (1998), this Court considered Woodall's and Roberson's contention that the probate court lacked jurisdiction to impose a finding of contempt against them. We agreed and reversed the trial court based on Georgia's longstanding restrictions on probate court jurisdiction. On review, our Supreme Court, citing Ohio law, held that

> the probate court's jurisdiction to approve the settlement of the malpractice claim and to protect the best interests of the incapacitated ward confers upon that court the authority to require that the attorneys pay into the registry of court such settlement funds as they disbursed to themselves, and to hold them in contempt for their refusal to do so[,]

*Gnann v. Woodall*, 270 Ga. 516 (511 SE2d 188) (1999), and reversed our opinion. Accordingly, our prior opinion in this case, which dealt exclusively with this issue, is hereby vacated, and we adopt the

Supreme Court's holding with regard to this issue.

We note that the Supreme Court relied only on Ohio case law, which differs in many ways from our own, in reversing our opinion. The implications of the Supreme Court's ruling as to the application of Ohio law to enlarge the jurisdiction of Georgia probate courts must await future clarification. Left unanswered are questions regarding the propriety of joint hearings held by state and probate court judges as well as questions concerning the functions of the probate court relating to the appointment and review of guardians and their authority to act pursuant to Georgia statutes.

As to this latter consideration, in light of the unfortunate facts of this case, we urge our probate courts to employ utmost caution in the appointment of guardians. Here, Mydell was grossly and patently unqualified to act as Shiggs' guardian, yet this fact was not discovered until the damage had already been done. Appointment of qualified guardians is a judicial function, not a clerical one, and it requires a judge to use discretion to determine if the appointee has the experience and faculties to inspect, protect, and account for the estate of his or her potential ward. As a practical matter, the probate courts should prevent situations such as this one by imposing limitations and controls on guardians at the time of their appointment rather than relying on their authority to review the conduct of the guardian at a later time. Prevention is better than cure in the protection of estates. Third parties will be reluctant to contract with guardians, notwithstanding statutory law, where the probate court has authority to rescind or modify fully performed contracts, to the detriment of all.

2. Woodall and Roberson contend, in the alternative, that, despite the probate court's ability to hold them in contempt, the manner in which it did so denied them certain due process rights. We cannot agree.

(a) While this case has previously been before this Court and our Supreme Court, due to the complicated nature of the facts, we repeat them here in their entirety for completeness.

On August 12, 1994, Julia Mae Shiggs was admitted as a patient to Memorial Medical Center, Inc., where a caesarean section was performed on her on that day by Dr. Speir N. Ramsey. Following this operation, Shiggs developed internal bleeding which required additional surgery hours later. Shiggs subsequently developed bleeding and respiratory disorders and experienced a cardiac-respiratory arrest, leaving her severely brain damaged and comatose. All of the alleged acts of medical malpractice occurred in August 1994.

On October 15, 1994, while Shiggs remained comatose at Memorial, Michael L. Mydell, her common-law husband, was appointed as guardian of the person and property of Shiggs due to her permanent

incapacity. Shiggs was subsequently transferred from Memorial to a nursing institution on November 11, 1994. Her condition continued to deteriorate, and she ultimately died on December 30, 1996.

On April 14, 1995, Roberson, acting on behalf of Mydell as an individual and as guardian for Shiggs, filed an action in the State Court of Chatham County against Memorial and Dr. Ramsey alleging an individual claim on behalf of Mydell for loss of consortium and a claim on behalf of Shiggs for medical malpractice. On September 12, 1995, Mydell signed a contingency fee contract with Roberson which provided for attorney fees of 50 percent of the proceeds of any recovery, plus reimbursement for any expenses. Roberson, in turn, retained Woodall to assist him in the trial of the malpractice action, under an agreement between the lawyers, which provided for a division of the attorney fees under Roberson's contract with Mydell. This agreement was executed by Woodall and Roberson nunc pro tunc to January 1, 1996.

Prior to the beginning of trial on January 16, 1996, Mydell dismissed, with prejudice, his individual claim for loss of consortium against the defendants. The case then proceeded to trial on Shiggs' claims based on medical malpractice, and on January 22, 1996, the sixth day of trial, the parties orally agreed to settle the case, with the approval of the trial judge, for $3,325,000 in cash plus the continued provision of certain medical services to Shiggs for the remainder of her life, the details of which remained to be worked out between the parties. No reasonable present monetary value of the future medical services was established or approved at that time.

Dr. Ramsey agreed to contribute $600,000 and Memorial agreed to contribute $2,725,000 for a cash settlement of $3,325,000, plus the provision of certain future medical services to Shiggs, for which Memorial would be solely responsible. Certain trusts were to be established for the benefit of Shiggs and her children and the $600,000 payment by Dr. Ramsey was to be used to fund the trusts.

The $3,325,000 cash portion of the settlement was paid as follows: On January 25, 1996, a partial settlement check in the amount of $1,900,000 was delivered by Memorial to Roberson, was endorsed by the appropriate parties and deposited in Roberson's trust account. An additional sum of $825,000 was wire-transferred by Memorial into Roberson's trust account on January 26, 1996.

On January 28, 1996, prior to the approval of any written settlement agreement by Mydell or the court, Roberson calculated the attorney fees and issued checks to himself and to Woodall. Roberson issued a check to Woodall for his share of the attorney fees in the amount of $1,100,000, in accordance with the agreement between the lawyers, which Woodall deposited on January 29, 1996. Roberson also distributed $1,300,000 to himself as his own fee. Roberson used

a gross settlement amount of $4,800,000 to calculate 50 percent attorney fees of $2,400,000. Roberson also retained $102,295.24 for his expenses. It is unclear how Roberson arrived at the gross figure, as there were only two components that made up that figure, the cash settlement and the present value of the future medical services to be rendered to Shiggs, which figures do not agree with the figure used by Roberson.

Roberson apparently relied on his expert's evaluation of the present value of the future medical services which were to be provided to Shiggs of $1,425,000, plus the cash settlement of $3,325,000, to arrive at the gross settlement figure of $4,800,000 upon which he calculated the 50 percent attorney fees in the amount of $2,400,000. In its November 1, 1996 order, the state court pointed out, among other things, a discrepancy in the valuation of future services by Memorial. The court noted:

> The record reflects that the value of the future services to be provided by Memorial Medical Center, Inc. may have been inaccurately calculated and used in making distribution of the proceeds pursuant to the attorney fee contract. Specifically, the distribution sheet, which was presented to the Court following the first hearing and at the request of the Court, reveals that the future services were valued at $1,425,000. The court noted that the actual documentation of medical expenses for Shiggs was $1,091,909 and may have included expenses other than those for respiratory equipment and the special mattress which were the only future medical expenses for which American was liable. On further inquiry by the Court, the counsel for the Plaintiff explained their methods for calculating the value of the future benefits and appear to have overvalued the services.

On February 16, 1996, Mydell, as guardian for Shiggs, signed a disbursement statement prepared by Roberson indicating a gross settlement in the amount of $4,800,000. The statement listed attorney fees of $2,400,000, attorney expenses of $102,295.24, a payment to Mydell, as guardian, in the amount of $151,359.33, and other expenses. The amount of the fees taken by Roberson and Woodall equaled one-half of the cash settlement and approximately one-half of the value of future services to be provided to Shiggs, as calculated by an economist hired by Roberson. The only purpose in establishing the present value of the future medical services was to calculate attorney fees. Such value was of no benefit to anyone else, as Memorial was obligated to pay the cost without regard to the amount thereof. Thus, Roberson and Mydell took 72 percent of the cash

received in the settlement to pay their fees. This left a $600,000 trust fund and the medical services received by Shiggs prior to her death as the total benefits to the plaintiff and her children. Although the settlement statement listed Mydell as a payee in his capacity as guardian, the check issued to Mydell on February 16, 1996, actually was made out to him in his individual capacity. It is unclear from the record whether this payment was intended to compensate Mydell for statutory guardian fees or was in consideration of his earlier dismissal of his individual claim.

Also on February 16, 1996, Roberson and Woodall filed petitions with the probate and state courts seeking approval of the settlement. The settlement agreement submitted to the court was not executed. It was returned to Roberson and was ultimately executed on July 1, 1996. Then, on July 29, 1996, Roberson filed a second petition to compromise a doubtful claim and for approval of the settlement agreement in the probate court and a second motion for approval of the settlement in the state court. A hearing was held on October 1, 1996, and both the state court judge and probate judge were present. At this hearing, it became apparent that the attorneys for Shiggs and Memorial were in disagreement as to the future services the parties had intended to be provided to Shiggs, and, which necessarily raised questions with regard to the value of such services. The written agreement, however, was clear and unambiguous as the court ultimately found. The written settlement agreement provided:

> As additional consideration [for the settlement], Memorial Medical Center, Inc. agrees to provide to Julia Mae Shiggs the respiratory care services currently provided and the use of the same or similar Hill-Rom mattress currently provided, for the lifetime of Julia Mae Shiggs.

On October 14, 1996, the probate court removed Mydell as guardian for Shiggs. After a subsequent hearing on November 1, 1996, the state court issued an order which approved the written agreement, including its provision for future medical services. The court could not reconcile Mydell's disbursement figures with the settlement agreement between the parties and therefore refused to approve the distributions which had actually been made. Rather, the state court judge requested that the probate court review "the distribution of funds and the conduct of the Guardian, Michael Mydell, in regard to his fiduciary duties and responsibilities to his ward, Julia Mae Shiggs."

On November 8, 1996, the judge refused to approve Mydell's petition to compromise claim filed in the probate court, finding that the disbursements of the settlement proceeds which were made were

improper. The probate court ordered that "the attorneys who have come into possession of the assets of Julia Mae Shiggs, i.e. David Roberson and John T. Woodall, pay all money received by them on behalf of Julia Mae Shiggs . . . into the registry of the State Court of Chatham County, Georgia."

After issuing a show cause order requiring Roberson and Woodall to explain why they had not reimbursed Shiggs' estate, the probate court found Roberson and Woodall in contempt of its November 8, 1996 order and provided that the attorneys could purge themselves of contempt by depositing surety in the amount of $2,400,000, the amount of attorney fees disbursed without approval of the court. The probate court further ordered that if Roberson and Woodall failed to deposit the funds as directed they would be incarcerated. This appeal then ensued.

(b) Both Woodall and Roberson contend that their due process rights were denied with regard to the November 8 order of the probate court which required them to pay their fees into the registry of the state court. In their answers to this order, filed in early December 1996, Woodall and Roberson contended, without any specificity, that the order violated their due process rights and, as such, should be vacated. Neither Woodall nor Roberson requested a hearing on this issue, however, and neither one moved the court to make a ruling at any time. In fact, the issue was not even argued at the contempt hearing held on January 21, 1997.

As with most constitutional rights, due process rights may be waived by failing to appropriately pursue them at the trial level.

It is well settled that, even if a defendant has a due process right to a hearing, that right [might] be waived by failure to request a hearing. The trial court has no duty to initiate [a] hearing until requested by one of the parties. The party seeking a hearing must take affirmative steps to request one.

(Citations and punctuation omitted.) *Isaac v. State*, 237 Ga. App. 723, 728 (3) (516 SE2d 575) (1999).

In this case, Woodall's and Roberson's only attempt to pursue their due process rights was to vaguely raise them in their answers to the probate court's November 8 order. Having failed to take further action by requesting a hearing on this matter or compelling the trial court to make a ruling on it, Woodall and Roberson have waived their right to receive a ruling on such matters on appeal. Id.

(c) Moreover, Woodall and Roberson also waived their due process claims that they were not given appropriate notice that the hearing on January 21, 1997, was a contempt hearing. After claiming

that they were ready to proceed with the hearing, neither Roberson nor Woodall raised any objection during the course of the hearing as to its nature. Moreover, both acquiesced to the hearing's nature as it unfolded, moving for a directed verdict on the grounds that wilful contempt had not been shown. Having failed to state any objection and having acquiesced in the nature of the proceedings, Roberson and Woodall cannot now complain that their due process rights were violated because they were not given appropriate advance notice that the hearing regarded their contempt. See, e.g., *Gwinnett County v. Vaccaro*, 259 Ga. 61, 62 (376 SE2d 680) (1989) (trial court can enter order of permanent relief at hearing for interlocutory injunction if parties acquiesce).

(d) Woodall and Roberson also contend that they were denied their right to a trial by jury with regard to both the November 8 order and the subsequent finding of contempt. However, Woodall and Roberson have waived their rights in this regard as well.

OCGA § 15-9-121 (a) provides:

> A party to a civil case in the probate court shall have the right to a jury trial if such right is asserted by a written demand for jury trial within 30 days after the filing of the first pleading of the party or within 15 days after the filing of the first pleading of an opposing party, whichever is later. . . . If a party fails to assert the right to a jury trial, the right shall be deemed waived and may not thereafter be asserted.

Furthermore, as a more general matter, "[i]n civil suits, the right to trial by jury may be implicitly waived by a party's conduct. One may waive the right to trial by jury by conduct indicative of the fact that the right is not asserted." (Punctuation omitted.) *SurgiJet v. Hicks*, 236 Ga. App. 80, 81 (2) (511 SE2d 194) (1999). The record contains no evidence that either Woodall or Roberson ever asserted any right to a jury trial below with regard to the November 8 order or the contempt hearing. To the contrary, as discussed above, they acquiesced in the proceedings as they were conducted. Accordingly, Woodall and Roberson have waived their right to argue that they should have received a jury trial.

(e) Woodall further contends that he could not be held in contempt because the record shows that he complied with the November 8 order of the probate court. Specifically, Woodall argues that, because his contract was with Roberson, the funds he received must be considered a payment by and through Roberson, not Shiggs' estate. Therefore, Woodall argues that he has never held any of the funds of Shiggs' estate, which the November 8 order required to be

paid into the registry of the state court. This argument is untenable.

The record clearly shows that Woodall received $1.1 million as compensation for his representation of Mydell, and the funds became available as a result of the settlement of the action. The probate court ordered Woodall to return the monies he had received pursuant to the representation. Woodall failed to do so, and the probate court properly held him in contempt for violating its November 8 order.

(f) In turn, Roberson, without citation to any authority, argues on appeal that he cannot be held liable for wilfully refusing to pay his fees into the court's registry because he previously had spent all of the money. Roberson, however, admitted that he had the ability to raise some money, and he provided no evidence that he was broke and could not pay. As such, the evidence was sufficient to support the trial court's finding that Roberson acted in wilful contempt of its November 8 order. *Schiselman v. Trust Co. Bank*, 246 Ga. 274, 276 (1) (271 SE2d 183) (1980).

*Judgment affirmed. Johnson, C. J., and Pope, P. J., concur specially.*

JOHNSON, Chief Judge, concurring specially.

I fully concur with both the analysis and the disposition of these two cases as to the substantive issues. I cannot agree, however, with the language of the majority suggesting that the Supreme Court's reliance, in part, on Ohio authority in support of its conclusion that the probate court had jurisdiction over the matters which are the subject of these appeals either expands the jurisdiction of Georgia's probate courts or causes confusion in the law of Georgia which "must await future clarification." Nor do I find it appropriate for this court, on remand, to criticize by implication the Supreme Court's use of Ohio authority to shed light on the inherent authority of probate courts in Georgia to act in furtherance of their broad statutory obligations to wards in guardianship matters. Legal reasoning is, most often, reasoning by analogy, and the citation of foreign authorities to assist in the orderly development and interpretation of the law is a time-honored tradition of the common law, one which this court itself has employed on many occasions.

I am authorized to state that Presiding Judge Pope joins in this concurrence.

DECIDED NOVEMBER 19, 1999 —
RECONSIDERATION DENIED DECEMBER 2, 1999 —

*Arnall, Golden & Gregory, Ann S. Infinger, Scott F. Bertschi, Caroline E. Taylor, Ladson & Suthers, John E. Suthers,* for appellant (case no. A97A1715).

*Betty Walker-Lanier*, for appellant (case no. A97A1716).

*Karsman, Brooks & Callaway, Dana F. Braun, Gannam & Gnann J. Hamrick Gnann, Jr., Bordeaux & Abbot, Louisa Abbot, Frederick S. Bergen*, for appellee.