In re the MARRIAGE OF Melissa ALVERSON n/k/a Melissa Randall, Appellee,

and

Kevin Leo Alverson, Appellant.

No. 98CA1430.

Colorado Court of Appeals, Div. II.

May 27, 1999.

Scott A. Tippett, Boulder, Colorado, for Appellee.

Robert G. Hancock, Louisville, Colorado, (on the Brief); Kevin Leo Alverson, *Pro Se.*

Opinion by Judge KAPELKE.

In this post-dissolution proceeding, Kevin Leo Alverson (father) appeals the district court order affirming a magistrate's ruling that father was in contempt for failing to pay Melissa Randall (mother) child support and medical expenses. We reverse and remand with directions.

### I.

Father contends that the magistrate erred in allowing mother's counsel to call father as a witness after he made it known that he intended to assert his Fifth Amendment privilege. We agree.

The Fifth Amendment privilege against self-incrimination, and its Colorado counterpart, apply in contempt proceedings in which the potential exists for a sanction of imprisonment to be imposed as punishment. *People v. Razatos,* 699 P.2d 970 (Colo.1985).

■ The Fifth Amendment's self-incrimination clause protects two distinct rights: first, a defendant's right not to take the witness stand at his own criminal trial; and second, the privilege of any witness, in any formal or informal governmental proceeding, not to answer questions when the answers might be incriminating. *Roach 'v. National Transportation Safety Board*, 804 F.2d 1147 (10th Cir.1986).

Here, the issue presented is whether a person such as father, who faces punitive contempt charges and possible imprisonment, is entitled to the broader Fifth Amendment protections afforded to a criminal defendant or, instead, to the somewhat more limited protections afforded to an ordinary witness.

To resolve this question, we need look no further than C.R.C.P. 107(d)(1). Under that rule, a person charged with indirect contempt and facing a possible punitive sanction must be advised of numerous rights normally afforded to defendants in criminal proceedings. These include the right to counsel, the right to plead either guilty or not guilty to the charges, the presumption of innocence, the right to require proof of the charge beyond a reasonable doubt, and, significantly, the right to remain silent.

■ Thus, C.R.C.P. 107(d)(1) recognizes that, although punitive contempt is not a common law or statutory crime, the possibility of incarceration associated with such proceedings is sufficient to require recognition and protection of many of the rights afforded to criminal defendants. *See People v. Razatos, supra;* see also *International Union v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) (criminal contempt is a crime in the ordinary sense and criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings); *In re Marriage of Betts*, 200 Ill.App.3d 26, 146 Ill.Dec. 441, 558 N.E.2d 404 (1990) (indirect criminal contempt proceedings must generally conform to the same constitutionally mandated procedural requirements as other criminal proceedings).

■ A person charged with indirect punitive contempt is in much the same position as a defendant in a criminal proceeding: each faces the possibility of incarceration. In light of that fact, we conclude that the scope of the Fifth Amendment privilege afforded such an alleged contemnor should match that afforded a defendant in a criminal proceeding and, therefore, should include the right not to take the witness stand.

Our conclusion finds support in decisions from other jurisdictions in which courts have determined that an alleged punitive contemnor's right to remain silent includes the right not to be called as a witness. *See In re Witherspoon*, 162 Cal.App.3d 1000, 209 Cal. Rptr. 67 (1984); *In re Marriage of Betts, supra; Ex Parte Werblud*, 536 S.W.2d 542 (Tex.1976).

We acknowledge that a division of this court has previously concluded that the Fifth Amendment privilege does not protect an alleged contemnor from being called as a witness in a punitive contempt hearing. *See In re Marriage of Hoyt*, 742 P.2d 963 (Colo. App.1987). The division in *Hoyt* relied on Fifth Amendment privilege rules applicable to parties and witnesses in *civil* proceedings. In our view, however, such an analysis and approach is no longer supportable, particularly in light of the 1995 revisions to C.R.C.P. 107. Accordingly, we decline to follow *Hoyt*.

■ Here, the record reveals that mother's counsel called father as a witness at the contempt hearing despite the fact that father's counsel had indicated that father would assert the privilege. Over father's objection, the trial court required him to take the stand and invoke the privilege on a question by question basis. Because father's Fifth Amendment rights included the right not to be called as a witness, we conclude that the magistrate erred in compelling him to take the stand. *See In re Witherspoon, supra; Ex Parte Werblud, supra.*

■ We further conclude that, under the circumstances here, the magistrate's error requires reversal of the contempt order. If, as is the case here, an error is of constitutional dimension, reversal is required unless the court is convinced that the error was

harmless beyond a reasonable doubt. *See People v. Burola,* 848 P.2d 958 (Colo.1993).

■ In determining that father was in contempt, the magistrate relied heavily on father's own testimony. Indeed, the magistrate's findings contain six separate references to father's testimony and the court's contempt finding is based at least in part on that testimony. The magistrate specifically noted that: "[Father's] own testimony completely supports findings of contempt here." Had the magistrate not required father to take the stand, that testimony would not have been presented.

We acknowledge that there was other evidence, including mother's testimony, that could provide some support for the magistrate's contempt determination. However, we cannot say with fair assurance that such evidence was "overwhelming," nor can we say that father's testimony did not substantially influence the magistrate's decision. Under these circumstances, we conclude that the magistrate's error was not harmless beyond a reasonable doubt. *See People v. Burola, supra.*

## II.

An issue presented in this appeal and that may arise upon remand is whether the trial court had jurisdiction to find father in contempt for refusing to pay medical expenses. We conclude that it did.

The parties' separation agreement provided that father would carry medical insurance and pay medical expenses for the parties' daughter. Father now claims that the trial court exceeded its jurisdiction in approving that portion of the separation agreement and that father's failure to pay such expenses could not constitute contempt.

■ Initially, we note that the parties were free to reach an agreement regarding payment of medical expenses. *See* § 14–10–112(1), C.R.S.1998; *In re Marriage of Mizer,* 683 P.2d 382 (Colo.App.1984).

■ Furthermore, the trial court's incorporation of that provision into permanent orders was certainly not an act beyond the court's jurisdiction so as to render the judgment void and thereby excuse noncompliance with its terms. *See Smith v. Schlink,* 44 Colo. 200, 99 P. 566 (1908) (judgment, even if erroneous, was not void such that disobedience of its terms would not constitute contempt of court).

Because we are reversing the contempt order, we need not address father's remaining contentions of error.

The district court's order affirming the ruling of the magistrate finding father in contempt is reversed, and the cause is remanded for a new hearing on the contempt motion in accordance with the views expressed in this opinion.

Judge CRISWELL and Judge PLANK, concur.