## A01A2067. IN RE LONGINO.
(562 SE2d 761)

POPE, Presiding Judge.

Attorney John T. Longino appeals his criminal contempt conviction arising out of his representation of Ideal Leasing Services, Inc.

in a condemnation action.[1] Ideal owned property in Whitfield County which it leased as a trailer truck repair facility. Whitfield County wanted to build a road through part of Ideal's property and brought a condemnation action to take the land it needed. A jury awarded Ideal $200,000 for the taking, but the trial court ruled the award was unsupported by the evidence and granted Whitfield County's motion for a new trial. The case was retried, and on April 18, 2001, the jury returned a verdict of $160,000 for Ideal.

Before the second trial, Whitfield County filed a motion in limine. The motion included a request to exclude evidence related to future expenditures by the property lessee. In particular, Whitfield County objected to evidence of an approximately $80,000 improvement that the lessee had intended to construct on the leased property before the announcement of the pending condemnation.

In response to Whitfield County's motion in limine, the trial court ruled that Ideal would

> not be allowed to offer any evidence with regard to special damages allegedly incurred by loss of bargain or loss of increased rental with regard to the proposed improvements planned by the lessee to the subject property and "chilled" by the announced forthcoming condemnation. A diminution in value which occurs as a result of an anticipated condemnation is not compensable.

During the second trial, Longino called Jimmy Leonard as an expert valuation witness. Leonard testified about the consequential damages to the remainder of Ideal's property by reason of the condemnation. On cross-examination, it became clear that, in determining consequential damages, Leonard had included the value of the improvement that the lessee had planned for the property before the condemnation was announced. Counsel for Whitfield County objected. The trial court ordered the jury to leave the courtroom, and the trial court then questioned the witness about his testimony:

> The Court: As I recall from the last trial, you had testified that in your opinion the just and adequate compensation for condemnee as a result of this taking was $120,000?
> Mr. Leonard: That's correct.
> The Court: And today you have stated that you have increased that by $84,000, which was the value that would have been added to this property as a result of the improve-

---

[1] This action was the subject of a separate appeal, *Ideal Leasing Svcs. v. Whitfield County*, 254 Ga. App. 397 (562 SE2d 790) (2002).

ments, which the condemnee had anticipated that the lessee, Great Dane, was going to make in accordance with an agreement that they had with them. Is that right?

Mr. Leonard: Yes, sir.

The Court: And what caused you, since the last trial, to do that? How did that come about?

Mr. Leonard: My counsel had said heretofore that addition —.

The Court: Who?

Mr. Leonard: Mr. Longino.

The Court: Mr. Longino suggested that to you?

Mr. Leonard: He said before that not being able to build that addition was going to be handled as special damages. . . . That I need not address that, so I didn't.

The Court: What about this time?

Mr. Leonard: This time the wording that I was given by my counsel, Mr. Longino, was that my definition of consequential damages could include that addition.

The trial court indicated that Longino had deliberately violated its evidentiary order and that the court would consider the question later. The trial court took up the matter at the end of the trial and, after finding that Longino had deliberately used witness Leonard to violate the court's motion in limine, asked Longino if he would care to be heard, heard his response on the record, found Longino in contempt, and sentenced him to 24 hours in the county jail and to pay a fine of $500. The trial court later issued a written "Summary Contempt Order" which memorialized the contempt finding and the sentence.

"The appropriate standard of appellate review for a criminal contempt conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *In re Healy*, 241 Ga. App. 266, 268 (526 SE2d 616) (1999). For reasons which follow, we find that the trial court did not err in finding Longino in criminal contempt of court and affirm.

1. Longino claims his conduct was not contemptuous. We disagree. To intentionally introduce evidence in contravention of a ruling by a trial court is contemptuous. See *Pleas v. State*, 268 Ga. 889, 891 (3) (495 SE2d 4) (1998), in which our Supreme Court affirmed the trial court's declaration of an attorney "in criminal contempt of court for purposefully violating a court ruling not to inject negative character evidence of the victim before obtaining permission from the court."

2. Longino also argues that the motion in limine did not exclude Leonard's testimony. In particular, Longino maintains that the loss of future improvements could be considered "consequential damages." The motion in limine, he further argues, only excluded the use of the planned lessee improvements as "special damages." We do not need to discuss whether the planned lessee improvements could be considered consequential damages to the remainder property in the condemnation action, because a common sense reading of the trial court's motion in limine shows that it was the intention of the trial court to disallow these improvements in all valuation testimony. The order's reference to a diminution in value by reason of an anticipated condemnation as "not compensable" should have been sufficient to show the intent of the court to exclude the use of the improvements in any measure of damages, including consequential damages. The trial court did not err in finding that witness Leonard's damage calculations were not consistent with the motion in limine.

3. Longino claims that the trial court erred in ruling that Longino had advised Leonard to include the lost improvements in his valuation testimony. We again disagree. The record supports a finding that Longino took an active role in the inclusion of the excluded evidence in Leonard's damage calculations.

4. Longino further claims the trial court erred in its finding that Longino handed it a prepared brief on the issue of the inclusion of lost improvements as consequential damages after the case went to the jury. Longino points out that the brief had been prepared and filed earlier as a response to Whitfield County's anticipated objection to the inclusion of the lost improvements in consequential damages. If the trial court was mistaken about the timing of the brief's submission, we do not find it materially relevant to Longino's culpability. Longino may have anticipated a dispute over the classification of lost improvements, but he said nothing to the judge or the other counsel until after the questionable valuation testimony had been put before the jury.

5. Longino contends the trial court denied him due process, particularly in determining criminal liability, without first advising Longino that criminal charges were being considered, in deciding the issue before hearing any evidence from Longino, and in denying Longino counsel. The controlling guidelines are set forth in *Dowdy v. Palmour*, 251 Ga. 135, 141-142 (2) (304 SE2d 52) (1983):

(a) A trial judge may find an attorney in contempt of court without trial by jury where the penalty actually imposed does not exceed six months. (b) During trial, a trial judge has the power, when necessary to maintain order in the courtroom, to declare conduct committed in his presence and

observed by him to be contemptuous, and, after affording the contemnor an opportunity to speak in his or her own behalf, to announce punishment summarily and without further notice or hearing. The carrying out of the punishment announced during trial may be postponed until after trial. (c) Where the announcement of punishment is delayed, and where the contumacious conduct was not directed toward the judge and where the judge did not react to the contumacious conduct in such manner as to become involved in the controversy, the judge has the power to hold a contempt hearing at the conclusion of the trial and, after giving the attorney reasonable notice of the specific charges and opportunity to be heard, to impose punishment. (d) Where the announcement of punishment is delayed, and where the contumacious conduct was directed toward the judge or where the judge reacted to the contumacious conduct in such manner as to become involved in the controversy, the judge may give the attorney notice of specific charges, but the hearing, including the attorney's opportunity to be heard, must be conducted by another judge.

(Footnotes omitted.)

The trial court acted within the parameters established by *Dowdy*. Sentence was passed after the trial by the judge before which the contumacious conduct occurred, but there is no indication in the record that the conduct was directed toward the judge or that the judge reacted so as to exhibit a personal interest in the matter. Longino was given an opportunity to be heard. Although Longino asked for counsel, the scope of due process for summary contempt proceedings set forth under *Dowdy* is quite specific, and it does not include the right to counsel. There has traditionally been no right to counsel at a summary contempt hearing. See Johnson and Reaves, Contempt of Court in Georgia, 23 Ga. State Bar Journal 66, 70-71 (1986). See generally *Garland v. State of Ga.*, 99 Ga. App. 826, 831 (2) (110 SE2d 143) (1959).

6. Longino claims the trial court erred in the form of the order of contempt because the order failed to cite "both the bad conduct and its adverse impact" with specificity. Longino also complains that there was no contemporaneous warning from the trial court that he refrain from engaging in the contemptuous behavior.

The requirements for the form of the contempt order are listed in *In re Healy*:

[I]n a summary contempt proceeding, objectively observable and describable behavior that causes an articulable interfer-

ence with the administration of justice must be demonstrably present. Both the bad conduct and its adverse impact must be set forth with specificity in the ruling by the court that finds as a matter of fact that no justification exists for the alleged contemnor's behavior. If these procedural steps are taken verbally, as is usually the case with a court trying to restore some immediate order in its proceedings, the judge must as soon as possible create a written record that preserves the following: (1) the notice to the perpetrator of the offensive conduct subject to being viewed as contemptuous due to its actual or imminent adverse impact; (2) a detailed description of the bad acts committed or omitted by the perpetrator despite a contemporaneous warning by the court to refrain; (3) an explanation of the deleterious impact on the court's operations or its integrity; (4) a recitation of the perpetrator's reasons given as justification for the questionable conduct; (5) a finding of fact by the judge of direct conduct interfering with the court's administration of justice, or imminently threatening such consequences; and (6) an order declaring the respondent in contempt of court and imposing a statutorily authorized sanction.

(Emphasis omitted.) Id. at 268-269. The trial court specifically identifies the conduct it finds contemptuous. The alleged conduct consists of purposefully circumventing a court order, which is a direct challenge to the court's authority. We find no merit to Longino's objections to the form of the trial court's contempt order.

Although there was no contemporaneous warning with respect to Longino's questioning of Leonard, it would not have been initially apparent to the trial court that Longino was engaging in contemptuous behavior because Leonard's testimony on direct examination did not show that he had used the planned lessee improvements in arriving at the measure of consequential damages. The trial court had no opportunity or reason to warn Longino until after Leonard had undergone cross-examination. But the motion in limine stood as the court's previously announced decision with regard to the evidentiary matter in question, and so there is no punishment here for conduct that Longino did not know would be in contravention of the order of the court.

7. Finally, Longino maintains that *Saldana v. Kmart Corp.*, 260 F3d 228 (3rd Cir. 2001), demands a reversal. In *Saldana,* the United States Court of Appeals for the Third Circuit reversed a contempt citation against an attorney because the attorney was not notified in advance of the legal rule on which her sanctions would be based. 260 F3d at 236. But *Saldana* is completely inapplicable. The lawyer was

sanctioned by the district court for her use of out-of-court profanity with other attorneys. The sanctions were not based on the inherent power of the court to punish contemptuous behavior, but on a district court rule which was referenced in the contempt order, and the court rule was not mentioned in any argument or proceeding before the contempt order was issued. 260 F3d at 236-237. This appeal involves summary contempt for an in-court violation of an existing order, and *Saldana* is not persuasive.

*Judgment affirmed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED MARCH 21, 2002 —

*John T. Longino*, pro se.

*McCamy, Phillips, Tuggle & Fordham, James H. Phillips, Charles L. Daniel III*, for appellee.