## A11A2000. BIRDSONG v. THE STATE.
(718 SE2d 549)

BARNES, Presiding Judge.

A jury found Barry Birdsong guilty of two counts of aggravated assault, one count of simple battery, and one count of possession of a

firearm during the commission of a crime. The trial court denied his motion for new trial. On appeal, Birdsong contends that during the charge to the jury at the close of the case, the trial court erred by giving a curative instruction concerning witness testimony about the victim's sexual history. Discerning no error, we affirm.

The record reflects that after Birdsong's alleged physical and sexual attack of his estranged wife, a grand jury indicted him on one count of kidnapping with bodily injury, one count of rape, three counts of aggravated assault, one count of aggravated battery, one count of making terroristic threats, one count of possession of a firearm during the commission of a crime, and one count of family violence battery. The case was originally brought to trial in May 2008. However, during the cross-examination of the victim, defense counsel specifically inquired about her sexual activities after the alleged rape, leading the trial court to grant a mistrial. Before the case was brought to trial a second time, Birdsong filed a plea in bar based upon a claim of double jeopardy. The trial court denied the plea, and on appeal to this Court, we affirmed, concluding that defense counsel's question to the victim regarding her sexual activities violated the Rape Shield Statute, OCGA § 24-2-3, and created a manifest necessity for the mistrial. See *Birdsong v. State*, 298 Ga. App. 322, 325-327 (2) (680 SE2d 159) (2009).

The case was brought to trial for a second time in February 2010. The victim testified that she and Birdsong had been married for several years but had separated in October 2006. On January 1, 2007, she went to Birdsong's house to retrieve their son's video game system. According to the victim, after she entered the house, Birdsong demanded that she move back in with him, but she responded that she was not returning and was planning on getting a divorce. The victim testified that Birdsong then slapped her in the face and stated that she was going to come home "or else." She related that when she asked Birdsong what he meant by "or else," he began grabbing and clawing at her neck and face, dragged her up the stairs, down the hall, and into the master bedroom on the upper level of the house. The victim further testified that once in the bedroom, Birdsong threw her on the bed and began choking her; retrieved a shotgun and poked her in the chest and stomach with it while threatening to kill her; cracked one of her teeth by striking her in the mouth with the shotgun; and forced her to have sexual intercourse with him. According to the victim, after Birdsong forced her to have sexual intercourse, he released her but warned her that she had one hour to retrieve her belongings and move back into the home.

The victim's son, who was outside the house in his mother's car at the time of the attack, testified that when his mother exited the house, she looked like she had been crying and seemed "really

scared." A sheriff's deputy who responded to a 911 call made by the victim similarly testified that she appeared "terrified" when he encountered her shortly after the attack, and he observed that she had a chipped tooth. Additionally, an analyst from the crime lab testified that DNA obtained from vaginal swabs collected from the victim as part of a rape kit examination matched Birdsong's genetic profile.

Birdsong's defense was that the victim was not credible and that any sexual encounter between them had been consensual. To support this defense, Birdsong's counsel cross-examined the victim about her sexual history with Birdsong and elicited a concession from her that she repeatedly had consensual sexual intercourse with him after their separation and had one such encounter only a few days before the alleged attack. Defense counsel also pointed to a prior statement by the victim indicating that the last consensual encounter between them had occurred the day before the alleged attack.

While Birdsong himself did not testify, the defense called several witnesses, two of whom divulged information about the victim's alleged sexual history with other men. One defense witness, the victim's sister-in-law, testified on direct examination that the victim had been having an affair during her marriage to Birdsong; that the victim had stayed out all night with a boyfriend two days after the January 1 incident; and that the victim would walk around naked in front of other men who came over to her home and was neither shy nor modest. Another defense witness, when asked by defense counsel about the victim's "reputation," testified that he had "heard that she was promiscuous."

After the defense rested, the prosecutor argued that as in the first trial, defense counsel had violated the Rape Shield Statute by eliciting testimony about the victim's sexual activities with other men. The prosecutor stated that he was not requesting a mistrial because of the stress that would be engendered in the victim and her children by conducting a third trial. He further argued that a curative instruction given immediately after the offending testimony would have only served to accentuate the impermissible testimony to the jury and make the situation worse. Instead, the prosecutor argued that the trial court ought to give a curative instruction as part of its charge to the jury at the close of the case. The prosecutor stated that it was his "hope . . . that a thorough and curative instruction given during a larger body of instructional law at the close of the case [would] help the jury understand that this kind of business is irrelevant and shouldn't enter into their deliberations at all."

The trial court admonished defense counsel for the offending testimony and ultimately agreed to give a curative instruction rather

than grant a second mistrial.[1] As part of its closing jury charge, the court instructed:

> A woman's past sexual behavior with anyone other than the defendant shall not be considered by the jury in a case of this type. Any questions or testimony you may have heard relating to the past sexual history of the victim in this case including evidence of the victim's marital history, mode of dress, general reputation for promiscuity, or sexual mores contrary to community standards are not admissible. You shall disregard them entirely, disabuse your minds of them entirely, and give them no consideration whatsoever in reaching your verdict in this case.

Defense counsel objected to the giving of the instruction on several grounds, including that the instruction should have been given at the time of the offending testimony rather than as part of the closing jury charge.

The jury subsequently found Birdsong guilty of two counts of aggravated assault, simple battery as a lesser included offense of aggravated battery, and possession of a firearm during the commission of a crime. The jury acquitted him of kidnapping with bodily injury, rape, one of the aggravated assault counts, terroristic threats, and family violence battery.

On appeal, Birdsong argues that the trial court erred by including the curative instruction relating to the victim's sexual history in its charge to the jury at the close of the case. He maintains that the curative instruction, which he does not dispute was an accurate statement of the law, was improper because the prosecutor's request for the instruction was untimely, given that no objection was made immediately after the improper testimony was elicited. He further maintains that even if the prosecutor did not waive his objection to the testimony, a curative instruction only would have been proper if given immediately after the offending testimony was elicited rather than as part of the closing jury charge.

---

[1] A lawyer may be held in criminal contempt for purposefully introducing "character evidence of the victim" in contravention of a prior court ruling. *In re Longino*, 254 Ga. App. 366, 368 (1) (562 SE2d 761) (2002). Furthermore, a lawyer has an ethical duty under Rule 3.1 of the Georgia Rules of Professional Conduct not to "conduct a defense" or "take other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another," such as the alleged victim in a rape case. The trial court did not hold Birdsong's counsel in contempt for eliciting the improper witness testimony regarding the victim's sexual history with other men. But the trial court admonished counsel for not, at the very least, instructing his witnesses to refrain from answering the open-ended questions posed to them in a manner that divulged the victim's alleged sexual history.

Birdsong's argument is without merit. "The trial court has broad discretion in fashioning a remedy to alleviate a problem created by the utterance of inadmissible evidence, and its exercise may not be reversed unless abused." (Citations and punctuation omitted.) *Clay v. State*, 216 Ga. App. 310, 312 (2) (454 SE2d 198) (1995). As an initial matter, a trial court has the inherent authority to instruct the jury to disregard inadmissible testimony, even if there was no timely objection to the testimony. Cf. *Ranson v. State*, 198 Ga. App. 659, 662 (8) (402 SE2d 740) (1991) (trial court was authorized to charge the jury on the concept of parties to a crime, given that it was pertinent to the legal and factual issues raised in the case, although there was no proper and timely request for the charge by the State). And a trial court does not err by giving a curative instruction in its closing jury charge rather than contemporaneous with the introduction of the improper testimony, when there was no request for such an instruction at the time the testimony was elicited. See *Mobley v. State*, 235 Ga. App. 151, 152 (508 SE2d 778) (1998). Furthermore, after hearing the prosecutor's concern that the giving of a curative instruction in isolation would only emphasize the error, we cannot say that the trial court acted outside its broad discretion in determining that the most subtle way of dealing with the improper testimony was to give a curative instruction embedded within the closing jury charge. See *Clay*, 216 Ga. App. at 312 (2) (noting that "there are instances where curative instructions would serve only to emphasize the alleged error") (citations and punctuation omitted).

Additionally, even if the giving of the curative instruction as part of the closing jury charge constituted error, "[a] conviction in a criminal case will not be reversed when it is highly probable that [the] erroneous jury instruction did not contribute to the verdict." (Citation and punctuation omitted.) *Nesbitt v. State*, 296 Ga. App. 139, 140 (2), n. 6 (673 SE2d 652) (2009). Given that Birdsong does not dispute that the curative instruction was an accurate statement of the law, and given that he was acquitted of the rape charge,[2] it is highly probable that the curative instruction did not contribute to the verdict in this case. See, e.g., *Knox v. State*, 290 Ga. App. 49, 54 (3) (658 SE2d 819) (2008) (any error in jury charge was harmless, given that the charge related to a count on which the defendant was acquitted).

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

---

[2] None of the other charges contained in the indictment included factual allegations of sexual misconduct by Birdsong.

DECIDED NOVEMBER 1, 2011.

*Mary Erickson*, for appellant.
*David McDade, District Attorney, James A. Dooley, Jeffrey L. Ballew, Assistant District Attorneys*, for appellee.

