**SECOND DIVISION**
**BARNES, P. J.,**
**BRANCH AND MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 29, 2013**

# In the Court of Appeals of Georgia

A12A2127. MURTAGH v. EMORY UNIVERSITY et al.

BRANCH, Judge.

This appeal is the culmination of a series of lawsuits between James J. Murtagh, M.D., and Emory University dating from 1999, the first of which ended in a settlement agreement. In the course of this subsequent action, which Murtagh filed in 2004, an arbitrator sanctioned Murtagh for violating the settlement agreement, dismissed his remaining claims, and awarded Emory fees and costs. After sanctioning Murtagh for contempt, the trial court confirmed the arbitrator's decision, issued a permanent injunction against Murtagh, and awarded Emory more than $1 million in damages, fees, and costs. On appeal from this judgment, Murtagh argues that the trial court erred when it confirmed the arbitrator's award, when it sanctioned him for contempt, and when it awarded Emory its attorney fees. We find that the trial court

erred when it imposed a fine of $15,000 for Murtagh's three acts of contempt, but we affirm in all other respects.

The record shows that after Murtagh was relieved of his position on the Emory faculty in 1999, he filed a variety of actions and complaints in state and federal courts and agencies against Emory, several members of the Emory faculty, and Fulton-Dekalb Hospital Authority raising claims ranging from misappropriation of grant funds to Irish ancestry discrimination. In 2001, the parties entered into a settlement agreement that included non-disparagement, confidentiality, and arbitration provisions. The arbitration provision provided that claims arising out of the subject matter of the settlement agreement would be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.

In September 2003, Murtagh demanded arbitration of disputes arising in the wake of the settlement agreement. In November 2004, however, Murtagh filed the instant action against Emory and its associated entities in Fulton County Superior Court for slander, defamation and other torts. Emory counterclaimed as to Murtagh's ongoing breaches of the settlement agreement, including his posting of articles and documents on the Internet alleging that Emory officials and lawyers had committed crimes, poisoned him, suppressed evidence, and tampered with witnesses.

In an amended counterclaim, filed in June 2005, Emory moved for injunctive relief and to compel arbitration as to Murtagh's violations of the settlement agreement. Emory also asserted that it was entitled to fees under OCGA § 13-6-11 because Murtagh had been "stubbornly litigious," had acted "in bad faith," and had caused Emory "unnecessary trouble and expense." In June 2005, the trial court issued a temporary injunction barring Murtagh from publishing "any defamatory or disparaging statements regarding Emory University." In August 2005, the trial court also granted Emory's motion to compel arbitration of all allegations contained in Murtagh's complaint. As to Emory's counterclaims, the trial court held that because these were specifically excluded by the terms of the settlement agreement, they would remain pending rather than proceed to arbitration.[1]

*The 2005 and 2007 Contempt Proceedings.* In light of Murtagh's alleged continuing breaches of the settlement agreement, including his Internet activities, the trial court conducted a hearing in December 2005 and held Murtagh in contempt for

---

[1] Because discovery on Emory's counterclaims was expected to overlap with the subject matter of Murtagh's claims, which were entering arbitration, the parties agreed in writing that any further discovery in their dispute, regardless of venue, would be governed by the Georgia Civil Practice Act.

violating the temporary injunction.[2] The trial court found that Murtagh had deliberately violated the injunction and entered an order that any future violations would result in the dismissal with prejudice of and the issuance of a permanent injunction against all of Murtagh's claims as well as a fine of $15,000 for each additional violation of the temporary injunction or the contempt order itself. The trial court also ruled that Emory was entitled to fees under OCGA § 13-6-11 for having to defend against Murtagh's 2004 complaint and for Murtagh's "bad faith conduct."

After Emory again alleged violations by Murtagh, a second hearing was held on October 3, 2007, and the trial court found that Murtagh had knowingly and willfully violated both the temporary injunction and the 2005 contempt order. The trial court then dismissed all of Murtagh's claims with prejudice, enjoined him from pursuing any further claims, fined him $15,000, and threatened imprisonment and further fines should Murtagh again fail to comply with the court's commands. The 2007 order also found that Murtagh had wilfully violated the 2005 order and authorized Emory to file evidence of its fees. Later in October 2007, Emory submitted

---

[2] A transcript of the December 2005 contempt hearing has not been included in the record, with the result that we cannot question any of the factual findings in the order entered after that hearing. See *Jackson v. Jackson*, 294 Ga. App. 577 (669 SE2d 496) (2008).

4

voluminous evidence to show that from September 2003, when Murtagh demanded arbitration, Emory had incurred expenses of more than $1.8 million, with a net amount due to it (after the setoff of amounts still owed to Murtagh under the settlement agreement) of more than $1.25 million.

*The Arbitration.* As we have noted, the trial court ordered Murtagh's claims, but not Emory's counterclaims, into arbitration in August 2005. In a decision issued in June 2008, the arbitrator concluded that Murtagh had engaged in "multiple discovery abuses including intentionally withholding . . . multiple responsive and material documents, even after being ordered to do so by the Arbitrator, and committing perjury during discovery." On the basis of these findings, and under authority of OCGA §§ 9-11-37 and 9-15-14 (b), the arbitrator dismissed Murtagh's claims, struck his defenses to Emory's counterclaims, entered a default judgment in favor of Emory, and ordered Murtagh to pay attorney fees. In a second decision rendered in February 2009, the arbitrator ruled that OCGA § 13-6-11 entitled Emory to recover only those fees and expenses incurred in prosecuting its counterclaim.[3] After setting off more

---

[3] The arbitrator thus reduced the fee award by the amount of costs Emory incurred when it filed an independent action (the so-called "Hennigar litigation") to determine the identity of an individual responsible for fraudulent emails disparaging it.

5

than $519,000 still owed by Emory to Murtagh under the settlement agreement, the arbitrator awarded Emory $147,597.83 in fees and expenses plus interest.

*Confirmation of the Arbitrator's Award and Final Judgment*. After an unsuccessful attempt to remove the instant Georgia action to federal court, on September 30, 2011, Murtagh moved to vacate the arbitrator's 2008 and 2009 awards. In October 2011, Emory moved to confirm the arbitrator's award.

In January 2012, after a hearing, the trial court confirmed the arbitrator's award, granted preclusive effect to the default judgment entered by the arbitrator, and granted a permanent injunction against Murtagh based on his "pattern of repeated, bad faith and surreptitious violations of the Settlement Agreement, and his repeated and willful violations of the Court's orders." On the matter of fees, the trial court found that Emory's fees as submitted in 2007 were "reasonable, properly documented, and awardable," and awarded Emory $1,101,912.13 in damages, fees, and expenses.[4] This appeal followed.

---

[4] In an effort "to avoid a duplication of the fees and expenses awarded by the Arbitrator," the trial court reduced its fee award by $652,701.06, or slightly less than the sum awarded by the arbitrator, to reach a total award to Emory (including the $15,000 contempt fine) of $1,101,912.13.

6

1. Murtagh argues that the trial court erred when it confirmed the arbitrator's award, including the arbitrator's sanctions and his dismissal of Murtagh's claims. We disagree.

(a) As an initial matter, Murtagh's motion to vacate the arbitrator's award was not timely. The FAA – which the parties agreed and the trial court ruled would apply – required Murtagh to file any motion to vacate the arbitrator's award within three months of its entry. 9 USC § 12. Although the parties received the arbitrator's award on February 4, 2009, Murtagh did not file his motion to vacate that award until more than two years later, on September 30, 2011. Accordingly, the trial court did not err when it concluded that Murtagh's motion to vacate the arbitrator's award was untimely.[5] See *Piccolo v Dain, Kalman & Quail, Inc.*, 641 F.2d 598, 600 (II) (8th Cir. 1981) (party's failure to serve notice of motion to vacate "forfeits the right to judicial review of the award") (citations omitted).

(b) Murtagh has also made no showing that the arbitrator's award was unauthorized.

---

[5] Notably, Murtagh has not challenged the trial court's ruling that the FAA governed the arbitration of disputes concerning the settlement agreement. Accordingly, Murtagh's continued citations to the Georgia Arbitration Act are without effect.

7

A trial court applying the FAA may vacate an arbitrator's award only under very limited circumstances:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators . . . ; (3) where the arbitrators were guilty of misconduct . . . or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10 (a). Murtagh appears to argue for vacatur under the fourth of these grounds, that the arbitrator exceeded his powers in dismissing Murtagh's claims and entering judgment against him. This attack on the arbitrator's powers is misplaced.

Under the FAA, an arbitrator of a contract dispute issues an unauthorized award or exceeds his powers to resolve the dispute only when the arbitrator's award contradicts the express language of the parties' agreement. *IMC-Agrico Co. v. Int'l Chem. Workers Council, Local 35-C*, 171 F.3d 1322, 1325 (II) (11th Cir. 1999). And the federal courts have affirmed an arbitrator's power to dismiss claims as a response to the malfeasance of a party to the arbitration. See *First Preservation Capital v. Smith Barney, Harris Upham & Co.*, 939 F.Supp. 1559, 1566 (III) (B) (S.D. Fla. 1996) (arbitration panel did not exceed its authority when it dismissed claims with prejudice

8

after claimant interfered with arbitration procedures). Murtagh has not shown that the arbitrator's award contradicted the express language of the settlement agreement, and the arbitrator had some evidence to support its finding that Murtagh had engaged in discovery abuses, and thus to dismiss his arbitrated claims. Nor did the trial court err when it confirmed the arbitrator's award, including the arbitrator's dismissal of Murtagh's claims, because Murtagh has not shown that any of the arbitrator's actions, including that dismissal, exceeded his powers under the FAA. *First Preservation Capital*, supra at 1566-1567 (affirming arbitration panel's dismissal of malfeasant plaintiff's claims as "not clearly erroneous" in light of defendant's request that arbitrators dismiss the case "in its entirety").

2. Murtagh also argues that the trial court exceeded its authority when it affirmed its 2007 award of $15,000 for his violation of the 2005 contempt order. We agree in part.

Georgia law distinguishes between acts deemed "civil" or "criminal" contempt as follows:

> Acts of contempt are neither civil nor criminal. They are either direct, meaning they are committed within the sensory perception of the judge, or they are indirect, meaning they occur outside the sensory perception of the judge. Once an act has been determined to constitute contempt of

9

court, the action the court takes to deal with the contempt determines whether the contempt is deemed "criminal" contempt or "civil" contempt, a distinction historically made by both appellate courts in this state. "The distinction between the two is that criminal contempt imposes *unconditional* punishment for *prior* acts of contumacy, whereas civil contempt imposes *conditional* punishment as a means of coercing *future* compliance with a prior court order."

(Citation omitted; emphasis supplied.) *Grantham v. Universal Tax Systems*, 217 Ga. App. 676, 677-678 (2) (458 SE2d 870) (1995), quoting *Carey Canada, Inc. v. Hinely*, 257 Ga. 150, 151 (356 SE2d 202) (1987). Under OCGA § 15-6-8 (5), a superior court has the power to punish acts of criminal contempt "by fines not exceeding $500.00 or by imprisonment not exceeding 20 days[.]"

The record shows that the trial court's 2005 order attempted to induce future obedience to the court's commands by imposing a prospective fine of $15,000 against Murtagh for any future violations of the settlement agreement. At the October 3, 2007 hearing, however, the trial court noted that the record justified a finding that Murtagh had violated the 2005 order three times, but reduced the amount of the fine dictated by that order from $45,000 (the amount prescribed as due for three violations at $15,000 per violation) to $15,000. When the trial court reduced the amount of fines set prospectively in the 2005 order, it readjudicated the matter, imposing

10

"unconditional punishment for prior acts of contumacy," *Grantham*, supra at 677 (2). As such, the trial court's 2007 award was an adjudication of criminal contempt in excess of the $500 per act authorized by OCGA § 15-6-8 (5). Id. We therefore reverse that portion of the trial court's order imposing a fine of more than $1500, which is the statutorily permitted amount for Murtagh's three acts adjudicated as criminal contempt at $500 per act. Id. at 678.

3. As to the award of attorney fees, Murtagh does not dispute the calculation of the amounts awarded by either the arbitrator or the trial court. Instead, he attacks both the arbitrator's and the trial court's authority to award fees either as a sanction for contempt or under OCGA § 13-6-11.

(a) As we have held in Division 1 above, the trial court did not err when it confirmed the arbitrator's award, which included an award of fees and expenses as a sanction against Murtagh's discovery abuses, including perjury.

(b) The trial court had the legal authority under OCGA § 13-6-11 to make its own award of fees and expenses incurred in the aftermath of Murtagh's breaches of the 2001 settlement agreement.

It is true that "there is no power to award attorney fees in contempt proceedings. Although costs may be awarded, attorney fees are not a part of costs." (Citation

11

omitted.) *Dekalb County v. Bolick*, 249 Ga. 843, 845 (2) (295 SE2d 92) (1982). Our Supreme Court has noted, however, that this "prohibition against attorney fees" is itself "limited to criminal contempt," *Minor v. Minor*, 257 Ga. 706, 709 (2) (362 SE2d 208) (1987), and that other authority, such as OCGA §§ 13-6-11 and 9-15-14, may authorize an award of fees. See id. at 709-710 (2).

It is longstanding law that a party may recover attorney fees under OCGA § 13-6-11 "[i]f the breach of [a] contract, which is the cause of action, is colored or poisoned by bad faith." *Edwards-Warren Tire Co. v. Coble*, 102 Ga. App. 106, 114 (115 SE2d 852) (1960). As this Court has more recently held,

> Under OCGA § 13-6-11, litigation expenses, including attorney fees, may be recovered where the plaintiff has specially pleaded them and where the defendant has (1) acted in bad faith, (2) been stubbornly litigious, or (3) caused the plaintiff unnecessary trouble and expense. Such expenses also are available to a defendant who prevails on an independent counterclaim against the plaintiff.

(Footnote and punctuation omitted; emphasis supplied.) *Dennis-Smith v. Freeman*, 277 Ga. App. 822, 824 (3) (627 SE2d 872) (2006); see also *Sanders v. Brown*, 257 Ga. App. 566, 570 (c) (571 SE2d 532) (2002).

12

To the extent that the trial court's final award of fees includes those Emory expended in defending against Murtagh's 2004 suit on its merits, rather than in pursuing Emory's counterclaims, the trial court was authorized to conclude, as it did in its orders of 2005, 2007, and 2012, that Murtagh's 2004 suit was part of a larger pattern of "repeated, bad faith and surreptitious violations of the settlement agreement." See *Edwards-Warren*, supra at 114 (authorizing recovery of attorney fees by party harmed by opposing party's bad-faith breach of contract). Emory's counterclaims also arose from Murtagh's bad faith conduct in the performance of the settlement agreement, and thus "arose separately" from Murtagh's 2004 suit itself. It follows that the trial court did not err in awarding Emory attorney fees under OCGA § 13-6-11. *Sanders*, supra at 570 (c) (because defendant's "independent and permissive counterclaim" arose "after the institution of plaintiff's complaint," defendant was authorized to recover fees and expenses under OCGA § 13-6-11).

In sum, we affirm the trial court's judgment, including its confirmation of the arbitrator's award and its award of attorney fees and expenses, with the exception of that portion of the trial court's order awarding Emory $15,000 in contempt sanctions. We therefore remand the case so that the trial court may enter a final judgment

13

consistent with this opinion, including a sanction of $1500 for the three acts of contempt adjudicated by the trial court in 2007.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Barnes, P. J., and McMillian, J., concur.*