**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**September 23, 2013**

# In the Court of Appeals of Georgia

A13A1300. CARLSON v. CARLSON.

MCMILLIAN, Judge.

Deniz Carlson appeals the trial court's order finding her in criminal contempt of a modification order concerning child custody and visitation, which arose out of her 2008 divorce from Robert Louis Carlson.

"The appropriate standard of appellate review for a criminal contempt conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation and punctuation omitted.) *In re Longino*, 254 Ga. App. 366, 368 (562 SE2d 761) (2002).

On May 3, 2012, the trial court entered an order modifying custody of and child support for the couple's three children (the "May Order"). Pursuant to the order,

Robert and Deniz share joint legal custody of the children, but Robert was granted primary physical custody, with visitation granted to the mother. On August 29, 2012, Robert filed a motion for contempt, asserting that Deniz had violated the May Order by failing to return the couple's 15-year-old daughter after her scheduled visitation. Robert also requested an emergency hearing on the motion. Following the emergency hearing, on September 14, 2012, the judge ordered the child returned to her father and suspended the mother's visitation rights with that child until the next hearing on the issue (the "September Order").

On September 21, 2012, the trial court held a hearing on the motion for contempt. Deniz testified that her daughter told her that she wanted to live with Deniz instead of her father. Deniz contacted her lawyer who prepared an affidavit of election, which the daughter signed. The affidavit indicated that the daughter was more comfortable at her mother's house "where there were fewer distractions," and her father's house was "too chaotic." The affidavit also contained the daughter's "wish" that the trial court authorize her to live with her mother while the proceedings regarding her custody were ongoing. At the time the daughter signed the affidavit, however, no custody proceedings were pending. Deniz determined, based upon that

2

signed affidavit and after discussing the matter with her attorney, that she did not have to return her daughter to her husband despite the May Order.

Robert testified, however, that the May Order was entered after he filed a motion to modify custody based upon earlier affidavits he obtained from the couple's three children indicating that two of them wanted to stay with each parent 50 percent of the time and one wanted to stay with Robert 100 percent of the time. Robert testified that in response to that motion and the children's affidavits, Deniz and her attorney insisted that Robert abide by the then existing custody order until the judge had a chance to issue a ruling on the modification request.

After hearing the testimony, the trial court found that Deniz's statement that she thought she could ignore the May Order based upon her daughter's affidavit lacked credibility. The court noted that "these parties have been in front of me many times and are both well aware that you can't modify a Court order on your own." The trial court also found that the mother's testimony that her attorney told her to disobey the court's order to be "totally incredible." Based upon these findings, the trial court found Deniz to be in criminal contempt of the court's order by willfully refusing to comply with the order. The court noted that once she was served with the September Order, she returned the couple's daughter, indicating that her failure to return the

3

child earlier reflected a decision to disobey the Court's May Order. The court then ordered Deniz to be incarcerated for five hours, until 5 p.m. that day. He also ordered the parties not to discuss Deniz's incarceration with any of the children. The trial court entered a written order incorporating these finding on September 25, 2012 (the "Contempt Order").

On appeal, Deniz asserts that (1) she was not properly apprised of her Fifth Amendment rights against self-incrimination before testifying at the hearing; (2) the Contempt Order fails to find her guilty beyond a reasonable doubt; (3) she was entitled to a jury trial on her motion for contempt because her violation of the order was a specific crime under OCGA § 16-5-45; (4) the evidence was insufficient to support the trial court's finding that she was in contempt; and (5) public policy and the children's best interest warrant against incarceration.

1. Deniz argues that because Robert's motion alleged that she was in willful contempt of the May Order and asked that she be "sanctioned appropriately to include incarceration and the payment of attorney fees," the contempt hearing was akin to a criminal proceeding, entitling her to her Fifth Amendment rights against self-incrimination. She asserts that the trial court erred in failing to determine on the record whether she was waiving such rights.

4

Georgia law recognizes a distinction between "civil" or "criminal" contempt, although

> [a]cts of contempt are neither civil nor criminal. . . . Once an act has been determined to constitute contempt of court, the action the court takes to deal with the contempt determines whether the contempt is deemed "criminal" contempt or "civil" contempt, a distinction historically made by both appellate courts in this state. The distinction between the two is that criminal contempt imposes *unconditional* punishment for *prior* acts of contumacy, whereas civil contempt imposes *conditional* punishment as a means of coercing *future* compliance with a prior court order.

(Citations and punctuation omitted; emphasis in original.) *Murtagh v. Emory University*, 321 Ga. App. 411, 415 (2) (741 SE2d 212) (2013).

Here, the trial court found Deniz to be in criminal contempt and accordingly punished her unconditionally for what it found to be her prior act of contumacy. "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." (Citation and punctuation omitted.) *Garland v. State*, 253 Ga. 789, 790 (1) (325 SE2d 131) (1985). Thus, Deniz is correct that in proceedings for criminal contempt, the defendant is entitled to certain due process rights. "Without deciding what may be the rule in civil

5

contempt, it is certain that in proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself." *Gompers v. Bucks Stove & Range Co.*, 221 U. S. 418, 444 (31 SCt 492, 55 LEd 797) (1911) (relying on *Drakeford v. Adams*, 98 Ga. 722 (22 SE2d 833) (1896)). See also *In re Alverson*, 981 P2d 1123 (Colo. App. 1999); *In re Witherspoon*, 162 Cal.App.3d 1000 (209 CalRptr 67) (1984); *In re Marriage of Betts*, 200 Ill.App.3d 26 (558 NE2d 404) (1990).

Nevertheless, "[i]n Georgia, whether or not to testify in one's own defense is considered a tactical decision to be made by the defendant himself after consultation with his trial counsel and there is no general requirement that a trial court interject itself into that decision-making process." (Citations omitted.) *Burton v. State*, 263 Ga. 725, 728 (6) (438 SE2d 83) (1994). "While it may be the better practice to apprise witnesses of their [Fifth Amendment right against self-incrimination], and under some circumstances it must be done, under ordinary circumstances, where no statute requires it, and where the witness possesses ordinary intelligence and is under no duress, the judge need not inform the witness of his constitutional privilege." (Citations and punctuation omitted.) *Coonce v. State*, 171 Ga. App. 20, 20 (2) (318 SE2d 763) (1984).

6

Here, Deniz was represented by counsel at the contempt hearing, and it was up to Deniz and her attorney to make the tactical decision whether to waive her Fifth Amendment rights. The trial court had no duty to advise her of her rights or to determine on the record whether she had decided to waive them. See *Schiselman v. Trust Co. Bank*, 246 Ga. 274, 277 (2) (271 SE2d 183) (1980). In any event, even if a violation of Deniz's Fifth Amendment rights had occurred, such a violation "cannot be raised for the first time on appeal." Id. at 278 (2).

2. And although the Contempt Order does not recite that the trial court found Deniz to be in criminal contempt of the May Order "beyond a reasonable doubt," we know of no provision, and Deniz points us to none, requiring such a recitation. In the absence of an express statement of the standard applied, "we are obligated to presume that the trial court knows and applies the correct law." (Citation omitted.) *R & R Insulation Svcs., Inc. v. Royal Indem. Co.*, 307 Ga. App. 419, 436 (7) (a) (705 SE2d 223) (2010). See also *Munoz v. American Lawyer Media*, 236 Ga. App. 462, 466 (2) (512 SE2d 347) (1999); *Green v. Sun Trust Banks*, 197 Ga. App. 804, 807 (3) (b) (399 SE2d 712) (1990).

In any event, we find sufficient evidence in the record to support a determination that Deniz willfully violated the May Order beyond a reasonable doubt.

7

Deniz was aware of the custody and visitation provisions of the May Order, but she made the conscious decision to ignore the order based primarily upon her daughter's execution of an affidavit expressing her desire to live with her mother. She made this decision despite her insistence the year before that her husband abide by the parties' earlier custody order, even after all three children had executed affidavits expressing a desire for a different custody arrangement. In light of this evidence, the trial court could have properly found beyond a reasonable doubt that Deniz's violation of the May Order was willful, subjecting her to a finding of criminal contempt.

3. Further, contrary to Deniz's argument, she had no constitutional or statutory right to a jury trial under the facts of this case. Although her conduct in violating the May Order may also have subjected her to punishment for interference with custody under § OCGA § 16-5-45 (b) (1) (C),[1] she was not being prosecuted under that statute. Rather, the trial court was considering whether Deniz's actions constituted

---

[1] The statute provides in relevant part that "[a] person commits the offense of interference with custody when without lawful authority to do so, the person: . . . [i]ntentionally and willfully retains possession within this state of the child . . . upon the expiration of a lawful period of visitation with the child . . . ." OCGA § 16-5-45 (b) (1) (C). The first conviction for such an offense subjects the offender to a fine of between $200 and $500 and imprisonment for not less one month nor more than five months, or both, OCGA § 16-5-45 (b) (2) (A), with increasing punishment for subsequent violations. OCGA § 16-5-45 (b) (2) (B) & (C).

criminal contempt of the May Order. Under OCGA § 15-6-8, a superior court's authority to punish for such contempt is limited to the imposition of fines not exceeding $1,000 and imprisonment not exceeding 20 days, or both, and the U. S. Supreme Court has determined that no constitutional right to a jury trial exists in cases of contempt imposing punishment of under six months. *Codispoti v. Pennsylvania*, 418 U.S. 506 (94 SCt 2687, 41 LE2d 912) (1974). See also *Dowdy v. Palmour*, 251 Ga. 135, 141 (2) (a) (304 SE2d 52) (1983). Moreover, Georgia law provides a statutory right to a jury trial in contempt proceedings only for persons who are subject to imprisonment "for failing or refusing to pay over money under any court order, decree or judgment" where the person "denies that he has power, custody or control" of such money. OCGA § 15-1-4 (b).

But even if the right to a jury trial existed, Deniz would have waived any such right by failing to demand a jury trial in response to Robert's motion for contempt and by participating in the hearing on the motion before the judge without a jury. "[A] litigant may impliedly waive the statutory right to a jury trial by his conduct[.]" *Affatato v. Considine*, 305 Ga. App. 755, 759 (1) (700 SE2d 717) (2010) (jury trial on motion for criminal contempt waived by failure to demand jury trial in response to motions and by participating in request to place hearing on non-jury calendar). See

9

also *In re Woodall*, 241 Ga. App. 196, 202 (2) (d) (526 SE2d 69) (1999) (right to jury trial in criminal contempt proceeding waived where no evidence existed that party ever asserted such a right).

4. Further, we find no merit to Deniz's argument that her approximately five-hour incarceration was against public policy and her children's best interest. OCGA § 16-5-45 (b), which Deniz cited in this appeal, demonstrates that the public policy of this state contemplates that incarceration can be an appropriate punishment for willful violation of a custody order, as it mandates a minimum one-month incarceration for the first such violation, and longer periods of incarceration for subsequent violations. Moreover, in this case, the trial court ordered Deniz incarcerated only until 5 p.m. on the day of the hearing, and directed that no one mention this incarceration to the children. Deniz has failed to demonstrate how such a punishment impacted her children in any way, much less that it had a negative impact on them.

*Judgment affirmed. Andrews, P. J., and Dillard, J., concur.*