**June 17, 2024**

# In the Court of Appeals of Georgia

A24A0556. LAWHORNE et al. v. DOUGLAS.

MCFADDEN, Presiding Judge.

Thomas Lawhorne III and Optim Orthopedics, LLC (together, "Lawhorne") appeal the judgment entered on the $4.5 million jury verdict in favor of Amy E. Douglas in this medical malpractice action. Lawhorne argues that the trial court erred by instructing the jurors that the presence or absence of insurance benefits should not enter their deliberations in deciding the issues of liability and damages. Lawhorne argues that no evidence of insurance had been admitted, so the trial court had no basis to give the instruction, which injected the issue of insurance into the jurors' consideration.

We hold that the trial court did not err. In voir dire, a potential juror stated before the panel that, contrary to the belief that awarding large verdicts in medical malpractice cases "doesn't hurt anybody," such awards "come[ ] from the insurance company." Additionally, one of Douglas's doctors testified about his assisting her in obtaining "disability," which could refer to disability insurance benefits. So we affirm.

1. *Background*

Douglas sued Lawhorne, alleging that he had improperly implanted a spinal cord stimulator, causing her injury. The case proceeded to trial.

During voir dire, Douglas's attorney asked the potential jurors whether any of them had a problem awarding as damages the amount of Douglas's medical bills, which, he said, were almost $1 million. Lawhorne's attorney objected to the question on the ground that it asked the jury to prejudge the case. The trial court rephrased the question, asking whether the potential jurors had any compunction about awarding monetary damages if they believed the evidence supported an award. One of the potential jurors responded:

> I just feel the need to offer something. That my career was in the insurance/reinsurance industry. I was involved with books of medical malpractice insurance. I sometimes have a bias when people say, oh,

2

well, let's give them a lot of money because it doesn't hurt anybody. It comes from the insurance company. So I just offer that up for what it's worth.

Neither party objected or raised any issue with the trial court about the potential juror's comment.

During the presentation of evidence, Douglas introduced the video recorded deposition of her pain management doctor, which was played for the jury. On direct examination, the doctor testified that at one of Douglas's appointments with him, they discussed her pain and "just kind of helping her with any disability issue." Counsel for Lawhorne did not object.

On cross-examination, counsel for Lawhorne asked the doctor questions about the disability issue. Counsel observed that, "[I]n your notes there's a note that your office completed disability papers for Ms. Douglas." The doctor responded affirmatively. Counsel then asked, "Do you know or do you recall why disability papers were being complete[d] for her?" The doctor responded that

> if the pain is severe enough we have no problems helping somebody just as a temporizing measure get disability or if it's something that's historically a fact where they've already been disabled then we try to help maintain it; or, if it's somebody who basically might need disability, then

we obviously try to move forward in a direction that might help them be evaluated for that option. So any of those possible scenarios could exist then.

Neither party objected.

Lawhorne's attorney then asked the doctor, "As of March 22nd, 2017[, before the implantation of the spinal cord stimulator,] based upon her presentation and what was going on with her medical care you felt that Ms. Douglas was an eligible patient for disability assistance?" The doctor responded, "I think it's — for me it's arrogant to assume that somebody's not disabled, but I certainly would want to objectively get some information to see if they are disabled."

Lawhorne's attorney later asked the doctor the reason for ordering a functional capacity examination of Douglas, and he explained that he orders them to obtain objective data "versus some subjective understanding of what might be their disability." The attorney then stated that Douglas's examination "showed that she could not tolerate sedentary work." The doctor responded, "Okay."

At the charge conference, the trial court informed counsel that he would give what he called "an anti-collateral source charge," and read aloud the charge he intended to give. See generally *Denton v. Con-Way Southern Express*, 261 Ga. 41, 42-43

(402 SE2d 269) (1991), overruled on other grounds by *Grissom v. Gleason*, 262 Ga. 374, 376 (2) (418 SE2d 27) (1992). Counsel for Lawhorne objected, arguing that the charge was not based on the evidence presented during the trial and that it would cause the jurors to start thinking about insurance. The court denied the objection.

After closing arguments, the court charged the jury and included the following charge:

> In assessing the damages of the Plaintiff, the presence or absence of any insurance or other benefits of any type, for either the Plaintiff or the Defendants, as well as the financial circumstances of any person listed on the verdict form, shall not be considered by you in deciding the issue of liability or damages. The existence or lack of insurance or benefits shall not enter into your discussions or deliberations in any way in deciding the issues in this case. You must instead decide this case solely on the basis of the testimony and evidence presented in the courtroom, as well as the other instructions given to you by the Court.

Lawhorne renewed his objection.

The jury returned a verdict in favor of Douglas for $4.5 million, the trial court entered judgment on the verdict, and Lawhorne filed this appeal. (The judgment was subject to direct appeal even though Douglas's motion for attorney fees under OCGA § 9-11-68 remained pending at the time of the filing of the notice of appeal. See

5

*O'Leary v. Whitehall Constr.*, 288 Ga. 790, 791 (1) (708 SE2d 353) (2011) (motion for fees under OCGA §§ 9-11-68 and 9-15-14 did not toll the time for filing a notice of appeal).)

2. *Analysis*

Lawhorne argues that the trial court erred in giving the anti-collateral source charge because no evidence supported it. He also argues that the timing of the charge and its content require reversal. We disagree.

It is not reversible error for a trial court "to give the jury a cautionary charge couched in appropriate language." *Johnson v. State*, 128 Ga. 102, 104 (57 SE 353) (1907). "It is a fixed rule that the determination of whether a cautionary instruction is to be given generally addresses itself to the sound discretion of the trial judge." *Beasley v. State*, 198 Ga. App. 418 (401 SE2d 610) (1991) (citation and punctuation omitted). And a trial court may give proper cautionary instructions to eradicate the adverse effect of placing the issue of collateral sources before the jury. See *Park v. Nichols*, 307 Ga. App. 841, 843 (1) (706 SE2d 698) (2011). "The determination as to whether these harmful factors are present in a case necessarily rests in the discretion

of the trial judge." *Dubose v. Ross*, 222 Ga. App. 99, 100 (473 SE2d 179) (1996) (citations and punctuation omitted).

Lawhorne argues that the potential juror's comment that insurers pay medical malpractice awards was not evidence, and so did not support the anti-collateral source charge. But the trial court has the discretion to give a cautionary instruction not only because of improper evidence, but also if "any improper circumstance was injected into the case." *Emory Univ. v. Lee*, 97 Ga. App. 680, 698 (4) (104 SE2d 234) (1958) (citation and punctuation omitted). It was within the trial court's discretion to give the anti-collateral source charge because of the juror's comment which squarely placed before the other potential jurors the issue of medical malpractice insurance.

Lawhorne argues that the testimony of Douglas's pain doctor about "disability" refers to government benefits, not insurance, and so did not support the charge. Whether the doctor was referring to government benefits, private disability insurance, Social Security Disability Insurance benefits, or something else was not made clear. What was clear was that the doctor's testimony about "disability" related to Douglas's efforts to obtain some kind of financial benefit. So this testimony supported the trial court's decision to instruct the jury to disregard "the presence or absence of

any insurance or other benefits of any type." See *Candler Hosp. v. Dent*, 228 Ga. App. 421 (491 SE2d 868) (1997) (collateral source evidence includes disability income).

Lawhorne argues that, in any event, the testimony about disability concerned events that occurred before the surgery at issue, so the testimony could not have suggested collateral source payments related to the injury that was the subject of the action. See *Goforth v. Wigley*, 178 Ga. App. 558, 560 (2) (343 SE2d 788) (1986) (evidence of plaintiff's compensation for a prior vehicle collision was not excludable under the collateral source rule because it was not evidence of receipt of other compensation for vehicle collision being tried). Although the testimony about disability benefits may not have directly violated the collateral source rule given the timing, it was within the trial court's discretion to give a cautionary instruction because of the testimony's "likelihood to interject the issue of third-party payments or other irrelevant matters to the jury." *Vol Repairs II v. Knighten*, 322 Ga. App. 416, 420-421 (3) (745 SE2d 673) (2013).

Lawhorne argues that by waiting until the end of trial to give the anti-collateral source charge, instead of giving any kind of instruction at the time of the potential juror's comment and the pain doctor's testimony, the court improperly resurrected

the issue. "[A] trial court does not err by giving a curative instruction in its closing jury charge rather than contemporaneous with the introduction of the improper testimony, when there was no request for such an instruction at the time the testimony was elicited." *Birdsong v. State*, 312 Ga. App. 345, 349 (718 SE2d 549) (2011). No party contemporaneously objected to or requested an instruction because of the juror's comment or the pain doctor's testimony, so the timing of the instruction does not amount to an abuse of discretion.

Lawhorne also challenges the content of the instruction. He argues that the instruction improperly connected insurance to liability for the first time during the trial. We disagree. "The prejudice [from references to collateral sources] lies in the infectious nature of collateral source evidence, contaminating as it does the issue of loss with the issues of injury and liability. Such evidence is *prejudicial* because by its nature [its] effect is not self-limiting, but it laps over into other considerations. " *Collins v. Davis*, 186 Ga. App. 192, 193 (1) (366 SE2d 769) (1988) (citation omitted; emphasis in original). See also *Denton*, 261 Ga. at 43 ("[E]vidence of collateral sources is inherently prejudicial because its infectious nature tends to contaminate the entire trial.").

Finally, Lawhorne seems to argue that the trial court erred because, regardless of whether or not circumstances existed to support the charge to disregard insurance, the trial court did not rely on those circumstances and instead gave the instruction in an effort to preempt the jury from asking about insurance. Regardless of the trial court's reason for giving the cautionary instruction, we affirm under the right-for-any-reason rule. See *Reynolds v. State*, 299 Ga. 781, 785 (2) (792 SE2d 393) (2016) (even if trial court gave an erroneous reason for its decision, "pursuant to the right for any reason rule, we sustain the trial court's decision not to charge on [defendant's requested jury instruction]").

*Judgment affirmed. Mercier, C. J., and Rickman, J., concur.*